GEORGE HARRISON *v.* THOMAS C. POOLE, and another.

Where an attachment has been set aside on account of the insufficiency of the bond, the plaintiff may take out another attachment without filing a new petition, or having paid the costs of the first.  Art. 492 of the Code of Practice does not apply to such a case.

Where a defendant has appeared by counsel and joined issue on the merits, objections to the steps taken to bring him into court will be disregarded.

A restriction on the power of a partner to use the name of the firm in the usual course of trade, will be without effect, as to third persons without notice.  Not even fraud on the part of one partner will be any defence for his co-partners, where the obligation was contracted in the usual course of their trade, and the fraud was not participated in by the creditor.

The execution of a note raises a presumption that a just consideration has been given for it ; and the maker who pleads error or failure of consideration, must show it : but where one partner is sought to be made liable on a note given by the other, and he alleges fraud and want of consideration, and shows circumstances somewhat suspicious, the burden of proving the consideration will be on the plaintiff.

APPEAL from the City Court of New Orleans, *Collins,* J.

MORPHY, J.   This suit is brought by the payee of a promissory note for $700, drawn to his order, payable on demand, and dated on the 27th of April, 1841.  On the allegation that the drawers, Poole &· Co., were a commercial firm in New Orleans, composed of Thomas C. Poole and Thomas E. Allen, and that the latter resided in New York, a writ · of attachment was sued

out, and judgment prayed for, *in solido*, against the two partners. No answer was filed by Thomas C. Poole, against whom no further steps were taken in the suit. Thomas E. Allen appeared by counsel, and for answer averred that, the plaintiff's first writ of attachment having been quashed, he had no right to take out another, without first paying the costs incurred, and presenting another petition demanding the issuing of a second writ. The answer avers, that the defendant is not indebted to the plaintiff in any amount whatever; that the note sued on was not given by him, or by any partner of the firm of Poole & Co., in payment of any debt or demand due and owing by the firm; that it was made fraudulently and without consideration, so far as the firm is concerned, by one Thomas C. Poole, who had no authority to sign the name of the firm to notes or obligations whereby to bind·the same to the plaintiff, who received the note sued on, with the full knowledge that Poole was without authority to give it, and at a time when all business connection had ceased between the defendant and his former partner. The answer further avers, that the plaintiff never gave any consideration whatsoever for the note, and calls for strict proof. There was a judgment below in favor of the plaintiff from which this appeal was taken.

The plaintiff's writ of attachment having been set aside, by reason of the insufficiency of the bond given, he forthwith took out another. This, it is contended, he had no right to do, without previously paying the costs of the first writ, and filing a new petition. Article 492 of the Code of Practice, which is relied on in support of this position, does not, in our opinion, extend to a case like the present. The attachment, which held the place of a citation to the absent defendant being found defective, we can see no good reason why the plaintiff should not be permitted to have another writ issued under the same petition; and should be compelled to go through the vain ceremony of drawing up and filing another in the same terms. The defendant, moreover, having appeared by counsel, and joined issue on the merits, the judge below properly disregarded his objections to the steps taken to bring him into court.

From the articles of agreement between the defendants, it appears that Thomas E. Allen furnished the stock in trade of the

partnership, and was to receive one half of the profits of the business, which was to be carried on in New Orleans by Poole, who bound himself not to buy or sell goods on credit, but to confine himself to a cash trade, and not to use the name of the firm on notes, drafts, &c. There is no evidence showing any knowledge in the plaintiff of the restricted powers of Poole, the managing partner of the firm, which was a commercial one, nor does it appear that any public notice was given of such restriction. Third persons, without the means of knowing the precise extent of his authority, might well have supposed that he had that of using the name of the firm. They were not bound to inquire whether such a power had been expressly delegated, as it is one within the scope of the trading partner's general authority. Not even fraud on the part of one partner can afford his co-partner a legitimate defence, if the obligation is contracted in the usual course of their trade, and the fraud is not participated in by the creditor. Gow on Partnership, p. 38, 39, 147. 3 Kent's Comm. p. 41. In the present case, the averment in the answer that the note was given fraudulently, without consideration, and at a time different from that apparent on its face, implies that it was a transaction fraudulent and collusive between the plaintiff and the managing partner of the firm. Although the note bears date the 27th of April, 1841, and purports to be payable on demand, the subscribing witnesses to it testify, that they saw it for the first time, and signed it only a few days before the dissolution of the partnership, published on the 13th of April, 1842, and after they had heard of a difficulty between the partners ; and the plaintiff told them that his object in getting their names put on the note, was to enable them to remember that they had seen the same in his hands before the dissolution. The record shows, that independent of the notice alluded to by these witnesses, the dissolution of the partnership was advertised in the Bulletin Newspaper, on the 22d of March, 1842, at which time it really took place, and Poole left the store. There is no positive evidence to show that the note was in existence before the time referred to by the subscribing witnesses. It further appears, that no entry of this note was made in the partnership books, and that although Allen, who was then in New Orleans, had announced himself as charged with the liqui-

dation of, and ready to pay all legal demands against the firm, the note in question was not presented or mentioned to him by the plaintiff, who went to the store between the 22d of March, and the 13th of April, and who made a settlement with Allen for some articles sold by the firm. Under such circumstances, the plaintiff, we think, should be held to strict proof of the consideration he gave for this note. It is true, as has been urged by the appellees' counsel, that the execution of a note raises a presumption that a just consideration has been given for it, and that the maker who pleads error, or a failure of consideration, is bound to show it; but when, as in the present instance, one partner is sought to be made liable on a note given by the other, and he alleges fraud and an absolute want of consideration, and shows circumstances somewhat suspicious, the *onus* of proving the consideration must rest on the plaintiff, as the defendant cannot prove a negative. In the present case, the record does not satisfactorily establish that any consideration was given. As we have concluded to remand the case in order to allow the plaintiff an opportunity of introducing additional evidence, if he can, we deem it proper to refrain from any comment on that we have before us.

It is therefore ordered and decreed, that the judgment of the City Court be reversed, and this case be remanded for a new trial, the costs of this appeal to be borne by the appellee.

*C. K. Johnson* and *Larue*, for the plaintiff

*Vason*, for the appellant.