**J. T. GIBBONS, Inc., v. S. & B. STABLE et al.**

No. 14196.

Court of Appeal of Louisiana. Orleans.

Nov. 28, 1932.

Fred Middleton, of New Orleans, for appellant.

Edw. Fallon, Jr., and A. H. Ritter, both of New Orleans, for appellee.

HIGGINS, J.

The plaintiff sued the defendants in solido to recover the sum of $263.26 on an open account for certain hay, oats, etc., alleged to have been sold and delivered to S. & B. Stable, a commercial copartnership composed of Henry Selnik and Paul Baker, both nonresidents. The plaintiff also prayed that a writ of attachment issue to seize five certain named race horses, three of which were seized.

Defendant Selnik took a rule to show cause why the attachment should not be dissolved, which the court overruled, and the defendant then bonded the attachment by furnishing a bond in the sum of $700.

Defendant Baker filed an answer in which he admitted that S. & B. Stable was a commercial copartnership composed of Henry Selnik and Paul Baker, and that they were nonresidents, and that the sum claimed, $263.-26, was the balance due for hay, oats, etc., used in feeding the horses seized.

Defendant Selnik answered, denying that there was a commercial copartnership and that he was in any way indebted to the plaintiff, and he claimed to be the sole owner of the three horses seized. He further specially pleaded that, as owner of the horses in question, he had merely placed them in the care of Paul Baker for the purpose of having them run in the races in New Orleans, and that Baker was without any authority to contract any indebtedness with reference to them; and that there was a conspiracy between the plaintiff and Baker to make him pay the feed bill for three other horses which were owned by Baker, for which the defendant Selnik was in no way liable.

There was judgment in favor of the plaintiff, as prayed for, and the defendant Henry Selnik, individually and as owner of the S. & B. Stable, alone has appealed.

The evidence shows that the plaintiff sold and delivered to the S. & B. Stable, represented by Paul Baker, certain hay, oats, etc., which was used for the feeding of five or six race horses, and that there was a balance on account of the bill of $263.26. Three of the horses seized are claimed by the defendant Selnik as sole owner. The other two or three horses named in the petition were never seized, and the record does not show why they were not seized.

On the issue as to whether or not there was a partnership agreement between Baker and Selnik, plaintiff produced its salesman and bookkeeper, Mr. Grimsar, who testified

that Mr. Selnik, upon his arrival in the city in the early part of January, admitted that he and Baker were in partnership under the name of S. & B. Stable, and owned the horses that were subsequently seized, and that he promised to liquidate the indebtedness in the near future, but failed to do so. Mr. and Mrs. Leonard Wilson, a jockey and his wife, both testified that one evening in the early part of January, at the Wilson residence, Mr. Selnik and Mr. Baker both made an offer to Mr. Wilson to ride their horses, and stated that they were in partnership, and that the partnership owned the horses in question. In his answer the defendant Baker admitted that there was a commercial partnership existing between him and the defendant Selnik. At the time of the trial, the plaintiff summoned the defendant Baker for the purpose of cross-examining him under the Act No. 126 of 1908, but, due to the fact that Baker had left the city, he was not in court on the day the case was called for trial. The only evidence offered by defendant Selnik to contradict the above evidence was his own testimony, in which he denied having admitted that there was a partnership between him and Baker that owned the horses seized, and that he would pay the feed bill.

The great preponderance of the evidence shows that there was a partnership existing between the parties when the feed was purchased, and we so find that as a fact.

■ The next point to consider is whether or not the partnership was an ordinary or a commercial one. The mere fact that Baker stated in his answer that it was a commercial partnership, and that the plaintiff alleged that it was a commercial partnership, would not place it in that category, if the evidence in the case showed that it was an ordinary partnership under the definition or rule of law defining ordinary partnerships. The testimony of the witnesses shows that the defendant Selnik was engaged in the oil business, and desired to purchase and race three horses. Defendant Baker had had experience in racing horses. It was agreed between the parties that Selnik would purchase the three horses seized, and Baker would attend to the conditioning and racing of them, and equally divide the purses won with Selnik.

The relevant articles of the Revised Civil Code which define commercial and ordinary partnerships read, respectively, as follows:

"Art. 2824. Partnerships are divided, as to their object, into commercial partnerships and ordinary partnerships."

"Art. 2825. Commercial Partnerships are such as are formed.

"1. For the purchase of any personal prop-

erty, and the sale thereof, either in the same state or changed by manufacture.

"2. For buying or selling any personal property whatever, as factors or brokers.

"3. For carrying personal property for hire, in ships or other vessels."

"Art. 2826. Ordinary Partnerships are all such as are not commercial; they are divided into universal and particular partnerships."

■ In the light of the foregoing articles of the Code and the evidence, it appears to us that the partnership between the defendants was an ordinary one. The result of this finding is that each partner is bound for his share of the partnership debt, i. e., one-half each, there being two partners, and not in solido, as is the case where the partnership is a commercial one. Articles 2872, 2873, Rev. Civ. Code.

■■ The defense that Baker was without authority to contract any indebtedness is without merit, first, because we believe the record sufficiently shows that he was authorized to purchase feed for the horses, and, second, if he was given any instruction restricting his authority, it was never communicated to the plaintiff, and, third, because the partnership benefited by the transaction. Drumm v. Hanna, etc., 25 La. Ann. 645; Harrison v. Poole et al., 4 Rob. 193; article 2874, Rev. Civ. Code.

As to the defense that there was a conspiracy between the plaintiff and the defendant Baker to make defendant Selnik pay for feed that was consumed by horses which were owned by Baker individually, the record in no way sustains this special defense.

■■ The judgment of the lower court condemned the defendants in solido, and therefore should be amended as to the defendant Selnik, making him liable individually for one-half of the amount of the claim, but, as to the costs of the lower court, defendants are liable in solido. Article 2087, Rev. Civ. Code; State v. Miller, 169 La. 934, 126 So. 422; Hunter v. Laurent, 158 La. 876, 104 So. 747. The defendant Baker having failed to appeal, the court is powerless to change the judgment as far as he is concerned.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the lower court be amended so as to make the defendant Henry Selnik individually liable as an ordinary partner for his share or proportion of the claim of plaintiff, i. e., one-half thereof, and the defendants liable in solido for the costs of lower court, and in all other respects the judgment is affirmed, costs of this appeal to be borne by appellant, Selnik.

Amended and affirmed.