## R. P. FARNSWORTH & CO., Inc., v. ESTRADE, COTTON & FRICKE et al. *
### No. 16252.

Court of Appeal of Louisiana. Orleans.
Feb. 24, 1936.

---

*Decree amended on denial of rehearing 166 So. 676.

A. D. Danziger and Albert B. Koorie, both of New Orleans, for appellee.

P. M. Milner, of New Orleans, for appellant Fidelity & Deposit Co. of Maryland.

Harold J. Moore, of New Orleans, for appellant Herman J. Estrade.

McCALEB, Judge.

R. P. Farnsworth & Co., Inc., a general contractor, brings this suit against Herman J. Estrade, Henry Fricke, and Edward P. Cotton, subcontractors, and their surety, Fidelity & Deposit Company of Maryland, for damages arising from an alleged breach of contract.

Inasmuch as the record is voluminous and the testimony conflicting, we deem it essential to find certain facts presented, in order to determine the questions of law involved.

On March 4, 1932, plaintiff, a corporation engaged in the general contracting business, entered into a written contract to build a "factory building at Harvey, Louisiana," for the Continental Can Company, Inc., in accordance with certain plans and specifications attached to the contract.

Thereafter, on March 28, 1932, plaintiff engaged, by written subcontract, the copartnership of Estrade, Cotton & Fricke to unload and tie in place certain steel to be used in the erection of the factory, for which service to be performed by the subcontractors the plaintiff agreed to pay the sum of $6 for each ton of steel unloaded and fixed in place, in accordance with the architect's plans and specifications annexed to the general contract between the owner and the plaintiff. There is no definite time fixed in the subcontract for the completion thereof, but we discern therefrom that it was the intention of the parties for the subcontractors to be ready for work upon twelve hours' notice previously given by the plaintiff to them, and that the steel work would be performed at such times as needed, in keeping with the progression of the general contract.

It is provided, however, among other things in the subcontract, that, if the subcontractors fail to complete the work or delay the progress of the job, the plaintiff, in such case, is entitled to $50 per day liquidated damages.

This contract further provides for the furnishing of a bond by the subcontractors, and accordingly, on the same date upon which the subcontract was signed, the subcontractors, with the Fidelity & Deposit Company of Maryland as surety, executed a bond in the sum of $1,000 to the plaintiff, conditioned that the subcontractors " * * * shall well and truly and faithfully comply with all of the conditions and obligations of the said contract, and shall promptly pay all laborers, mechanics and furnishers of material doing labor and supplying material therefor, and deliver his said work free of liens, as well as pay all liquidated damages due under said contract. * * * "

The record shows that on March 28, 1932, certain steel arrived at the site of the job, and that defendant subcontractors became engaged in the unloading of the same, shortly after that time. They worked in harmony for apparently two or three weeks, when friction began to exist between the partners. Estrade, Cotton, and Fricke had, at no time previous to this contract, been engaged as partners, and the copartnership was evidently formed for the purpose of this particular undertaking. There is nothing in the record to show whether the partnership agreement was in writing, and the evidence leads us to the conclusion that there was merely a verbal agreement between the partners.

Soon after the unloading of steel had begun, there was a delay in operations caused by the architect's rejection of certain piling used by the plaintiff in the construction of the work. Fricke, one of the partners, became employed by the plaintiff, for his own account, doing pile-driving work. Estrade left the job and engaged himself in another enterprise at Biloxi, Miss., and Cotton (although the testimony is not clear on this point) remained on the job. During all this time the relationship between the three partners was becoming more and more strained. Their workmen were not being paid, and the plaintiff and the bonding company were receiving letters from the attorney of Estrade complaining of delays in the work and of the unsatisfactory relations between the partners. In short, both the plaintiff and the bonding company were aware of the internal disputes between the partners, and many conferences were held and letters written, having in view an amicable solution of the problem, so that the subcontract could be carried on to completion without default.

On June 3, 1932, Fricke, one of the partners, wrote to the plaintiff that he was abandoning the work, and that he was withdrawing from the copartnership of Estrade,

Cotton & Fricke. On the following day, June 4th, the plaintiff communicated this information to the bonding company, and advised it that prompt attention should be given by it (the surety) to these matters, and that the plaintiff would neither accept any assignment or recognize or take part in any disputes among the partners, and that plaintiff believed it to be the duty of the surety to see that the work progressed in accordance with the terms of the contract and without damage or delay to the plaintiff.

Notwithstanding the internal disputes between the partners, the abandonment of the work by Fricke, and the ostensible friction between Estrade and Cotton, the plaintiff co-operated with the surety to the fullest extent, with a view of allowing the partners to complete the subcontract.

However, on June 15, 1932, Estrade, together with two or three other men, went to the site of the work. He contends that he went there to pay off the gang of workmen, who had not been paid in some time. Contra, plaintiff contends that Estrade told the workmen that they were not going to be paid and that they might as well get off the job. The result was that Estrade was struck over the head with a piece of iron by one of his own workmen, rendered unconscious, and had to be transported to the hospital for treatment. He never went back to the job, and he stated on the witness stand that he would not have returned to work unless plaintiff could have guaranteed him police protection.

To request this court to believe Estrade's fanciful story, viz., that when he offered to pay off his laborers he was assaulted by them or one of them, is to assume that we are credulous.

Indeed, it strikes us that Estrade went to the site of the work for the specific purpose of inciting discord between the workmen, who were apparently friendly to Cotton, his partner. When he told these men that they were not to be paid and suggested that they leave the job, one of their number, justifiably enraged, committed the assault.

After June 15, 1932, until June 24, 1932, Cotton continued with the work under the contract. On June 24th he told Mr. Richard Farnsworth (plaintiff's representative) that he (Cotton) had no money to meet his pay rolls, and could not continue the work any longer. Farnsworth notified him that, under these circumstances, the job was aban-

doned, and that plaintiff would probably have to complete it. In order to minimize its damage, plaintiff engaged Cotton and his workmen to work for it, starting June 25, 1932.

On the date of the abandonment of the work by Cotton, the plaintiff wrote the bonding company the following letter:

"June 24, 1932

"Subject: Continental Can Company

"Fidelity & Deposit Co., c/o Black-Rogers & Co. Ltd., Agents 1217 Hibernia Bank Bldg., City.

"Gentlemen:

"Re: Estrade, Cotton & Fricke

"Reference to contract by and between Estrade, Cotton & Fricke and R. P. Farnsworth & Co. Inc., dated the 28th day of March, 1932, on which you have executed a Surety or Performance Bond on the same date.

"This is to advise that Estrade, Cotton & Fricke have abandoned the job this afternoon and are, therefore, in default.

"In accordance with the terms, conditions, etc. of the contract and bond we are calling upon you as Surety to proceed with the work within the time stated in the contract.

"Inasmuch as the contract carries a $50.00 per day Liquidated Damage and the default of the subcontractor will delay the progress of the job, it becomes necessary for us to perform some work for the subcontractor and at their cost to prevent such delays and Liquidated Damages.

"Yours very truly,

"R. P. Farnsworth & Co. Inc.

"LKG:IS

"CC—Fidelity & Deposit Co.—Baltimore, Md.

"Mr. Estrade

"Mr. Cotton

"Mr. Fricke."

On June 27, 1932, plaintiff received from the bonding company the following letter:

"New Orleans, La.

"June 27, 1932.

"R. P. Farnsworth & Co. Inc., Maritime Bldg., New Orleans, La.

"Re: Bd. #3793496—Continental Can Co.—Estrade, Cotton and Fricke

"Gentlemen: We acknowledge receipt of your letter of June 24th, 1932, wherein you advised us that Estrade, Cotton and Fricke abandoned the above job on June 24, 1932, and therefore are in default.

"In the third paragraph of your letter of June 24th, you suggested that in accord-

ance with the terms, conditions, etc., of the contract and bond that you are calling upon this Company as surety to proceed with the work within the time stated in the contract.

"Inasmuch as there is a tremendous amount of friction, according to our investigation, between Cotton on the one side and Estrade and Fricke on the other, the Fidelity and Deposit Company of Maryland could not under any circumstances undertake to complete this job. You have advised us that no payments have been made up to date on the job, and you have further informed us that an estimate will be due at the end of the current month. Inasmuch as a certain amount of payroll was due on Friday or Saturday of last week, said payroll not having been paid, you will, of course, refrain from making any payments to the sub-contractors, but it may be well for you to pay off the unpaid labor and deduct that amount from the amount of the estimate due them and hold the remaining portion of the estimate in your hands to cover the default.

"Before you telephoned to Mr. Milner's Office, or at the time that you did telephone Mr. Milner, I was discussing this case with Mr. Estrade and with Mr. Milner. Mr. Estrade was desirous of completing the job himself. Mr. Milner advised Estrade that the firm was in default and was fearful that if Estrade attempted to complete the job, at your suggestion, that Cotton, who seems to be of a very pugnacious disposition, would either attack Estrade, or create some trouble, which would tend to disrupt the due completion of the job. Mr. Estrade was in Mr. Milner's Office at the time you telephoned Mr. Milner that you had employed Cotton to go on with the work so as not to disperse the gang of steel erectors and so as not to incur the $50.00 a day liquidated damages. When Mr. Milner advised Estrade of the fact that you had employed Cotton, Estrade went 'up in the air', so to speak, and said he did not understand how you could employ Cotton when Mr. Milner had just told him that he could not be employed, inasmuch, as he was in default along with the other partners.

"Under the circumstances, it seems to us that in order to avoid any comeback in the future and a squabble with these men, you should not attempt to employ either of the two factions in the partnership, but should in the interest of harmony, give the job to some responsible outsider and let him finish it, or finish it up with your own superintendents.

"Yours very truly,
"[Signed]  W. S. Price
"W. S. Price, Attorney and Adjuster.
"WSP:LLT
"CC:  Black, Rogers & Co. Ltd.,
.  "Estrade, Cotton & Fricke."

The plaintiff acted immediately upon the request of the surety in its letter of June 27th, and discontinued the services of Cotton. The testimony also shows that, as soon as it could, plaintiff employed a new gang of men to complete the subcontract.

On June 30, 1932, the plaintiff received the following letter from Mr. P. M. Milner, attorney for the bonding company:

"June 30, 1932
"R. P. Farnsworth and Co., Maritime Building, New Orleans, La.
"In re:  Cotton, Estrade and Fricke
Sub-contractors

"Gentlemen: Referring to visit of Mr. Goode to my office this morning and the conference we had with Mr. Price in connection with sub-contract of Estrade, Cotton and Fricke for the erection of reinforcing steel on the Continental Can building, we beg to confirm the position which we have outlined to you, as Surety of these sub-contractors, at this meeting, as follows, to-wit:

"(1) The Bond which the Fidelity and Deposit Company of Maryland has signed is not a statutory bond, but is a bond in your favor as obligee, solely.

"(2) The Company now desires to withdraw the letter written by it June 24, 1932 in reference to giving its consent for the advancement of payrolls on this job, as you have advised us that no payrolls have been advanced on this job.

"(3) We beg to advise that we desire to withdraw a letter written you June 27th, in response to your letter of June 24, 1932, wherein you advised us that Estrade, Cotton and Fricke abandoned the job on June 24th, and therefore are in default.

"(4) We withdraw this letter and now desire to state that we reserve any rights under the bond of the Fidelity and Deposit Company of Maryland on behalf of Estrade, Cotton and Fricke to you for the following reasons:—

"(a) Your letter of June 24th, as we have just been informed on yesterday and today was evidently written in error.

"(b) We are informed that Mr. Cotton had not abandoned the job on June 24th

but are informed that your representative suggested to Mr. Cotton that his payrolls would not be met and that he abandon the contract and you would undertake to finish the work.

"(c) Mr. Cotton called to see Mr. Price, representing J. Costello Otto, attorney and adjuster of the Fidelity and Deposit Company, this morning, having first telephoned to him on yesterday evening. He denies positively that he ever abandoned the work but makes a statement which we have just given you relative to the suggestion coming from your Company as to the abandonment of work. Other parties working on the contract have likewise stated that the contract was not abandoned and that the men were actually at work on June 24th, although they had not received any pay for a period of three weeks. We are informed that Mr. Cotton had told these men to keep on working because he expected an estimate at the end of the month, when he would pay them.

"We wrote to Mr. Estrade, assuming the correctness of your letter of June 24th, and in fact had him in the office after Black-Rogers and Co. general agents, had received your letter. As you are well aware, Mr. Estrade was not carrying on the job and therefore was not aware whether the job had been abandoned or not; but I told him that as the partnership of Estrade, Cotton and Fricke was the sub-contractors and doing the work with their consent, that the abandonment of the work by Cotton was an abandonment by all of them and being an abandonment of the work, no default was necessary.

"The Fidelity and Deposit Company has acted throughout this entire matter under a misapprehension and on the verity of the statements made by you in your letter of June 24th. As both Mr. Estrade and Mr. Cotton and the men on the job deny that the job was defaulted or that they had abandoned the work but that the suggestion came from your representative on the job, the Fidelity and Deposit Company of Maryland feels that it has a right to withdraw the letters which it has written to you making suggestions towards the completion of this work and now desires to definitely state to you that it will stand on its contract rights with you.

"If at the completion of this job you have any claim to make against the bond, you may make same and the Fidelity and Deposit Company reserves the right to contest it or to make any defenses to your claim that may be proper and legal.

"In addition to this, we beg to advise that the Company has received a letter from Mr. Paul Maloney, representing these contractors. In view of the fact that you have taken charge of the job and are finishing it, it is now impossible to get these contractors back on the job and the matter will simply have to be carried out by you as you may deem best and advisable, leaving to you to make any claim you may see fit on this job on its conclusion, and leaving to the Bonding Company the right to dispute any and all liability on this Bond.

"Yours very truly,
    "[Signed]  P. M. Milner, Atty.
"PM :LW
"Copy: Estrade, Cotton and Fricke
    "J. Costello Otto."

Plaintiff completed the subcontract at a cost of $3,504.45. There were 316.7 tons of steel unloaded and fixed in place in the building. At the contract price of $6 per ton, the subcontractors were entitled to $1,900.20. Therefore, if plaintiff is correct in its contention, it has been damaged by reason of the breach of the subcontract, in the sum of $1,604.25, representing the difference between the cost to plaintiff of completing the work and the contract price of the defendants.

The district court found for the plaintiff, granting judgment in its favor for $1,604.25, against Herman J. Estrade, Edward F. Cotton, and Henry Fricke in solido, and against the bonding company in solido with the other defendants, in the sum of $1,000, with 10 per cent. attorney's fees.

It may be noted, at this point, that Estrade and Fricke filed reconventional demands against plaintiff, praying for judgment in the sum of $590 to each, representing alleged damages suffered by them because of plaintiff's alleged delay in the progress of the general contract. The judgment of the district court fails to mention these reconventional demands.

We also observe that the bonding company has filed, with its answer, a call in warranty against the other defendants, as principals on the surety bond, and this pleading likewise has not been considered by the court below.

From the adverse judgment, the surety company has appealed suspensively and devolutively to this court.

Estrade has appealed devolutively.

■ Fricke obtained an order for a suspensive and devolutive appeal. The order was conditioned upon him furnishing a bond as provided by law for the suspensive appeal, and in the sum of $100 for the devolutive appeal. He has failed to file either bond. Therefore his appeal is not before us. Braun et al. v. Veillon et al., 166 La. 564, 117 So. 719; Allen v. Allen, 165 La. 437, 115 So. 648.

The appeals of Estrade and Fidelity and Deposit Company of Maryland, now properly before us, raise a number of questions for determination. Some of the points raised are personal to each party.

■ The first question to be decided, which is of vital importance to recovery in this case, and affects all parties, is whether Estrade, Cotton & Fricke defaulted on the subcontract with plaintiff by abandonment of the work on June 24, 1932.

This question is answered in the affirmative. A review of the facts, as above found, leads us to this conclusion: Fricke abandoned the job on June 3, 1932, when he notified the plaintiff that he had withdrawn from the copartnership, and would not continue with the work. Estrade, by his behavior, exhibited that at no time was he satisfied with the partnership arrangement. He further disclosed his failure to carry on the contract, on June 15, 1932, at the site of the work, when he attempted to disorganize the labor, by telling the men that they would not be paid and that they might as well quit work. He was then assaulted, and states in his testimony that, after this assault, he had no intention of returning to work unless given police protection. We hold that he abandoned the work on June 15, 1932. Cotton stated that he abandoned the job on June 24, 1932. So that, at that time, there was a complete abandonment by all partners and the copartnership was in default.

■ The next contention made by counsel for the bonding company, which likewise applies to Estrade, is that the evidence shows the plaintiff to be in default in respect of its obligations to the subcontractors, and that, being in default, it was without right to put the defendant subcontractors in default. The case of Silverman v. Caddo Gas & Oil Company, 127 La. 928, 54 So. 289, is cited as sustaining this proposition.

However, it will be observed that the determination of this contention is premised upon a question of fact; that is, whether or not the plaintiff was in default on the subcontract.

The subcontractors unloaded in March 113 tons of steel, and in April 101 tons of steel, making a total of 214 tons unloaded by them in carrying on the work. They were never paid by the plaintiff for the steel unloaded.

The contract between the parties with reference to the terms of payment provides: "Payment on or before 15th of each month for eighty-five per cent of *work performed* preceding month." (Italics ours.) Hence, if the unloading of steel constitutes work performed, within the meaning of the contract, there would have been due to the subcontractors a payment on April 15, 1932, and another on May 15, 1932.

The plaintiff, in answer to this claim of default, asserts that the terms, conditions, plans, specifications, and bulletins of the general contract are made part of the subcontract, and that under the general contract payments are not due the contractor or subcontractor for work (including steel work) that is not *fixed in place;* that none of the steel unloaded by the subcontractors was fixed in place, and therefore no payment was due them. Furthermore, plaintiff claims that no demand in the form of a bill or progress estimate was ever made upon it by the subcontractors.

Section 5 of the subcontract provides: "The Contractor and Sub-contractor agree to be bound by the terms of the *Agreement, the General Conditions, Drawings and Specifications* as far as applicable to this sub-contract, and also by the following provisions. * * *" (Italics ours.)

Obviously, the words "Agreement" and "General Conditions" refer to the general contract between plaintiff and the owner.

Section 5, paragraph (e), of the subcontract, referring to the obligations of the contractor, reads:

"The Contractor agrees—

"(e) to pay the Sub-contractor, *upon the issuance of certificates,* if issued under the schedule of values described in Article 24 of the General Conditions, *the amount allowed to the Contractor on account of the Sub-contractor's work* to the extent of the Sub-contractor's interest therein." (Italics ours.)

And paragraph (h) of the same section reads:

"The Contractor agrees—

"(h) to pay the Sub-contractor *on demand* for his work or materials as far as executed *and fixed in place,* less the retained percentage, at the time the certificate should issue, even though the Architect fails to issue it for any cause not the fault of the Sub-contractor." (Italics ours.)

And paragraph (b) of the same section, dealing with the obligations of the subcontractor, provides:

"The Sub-contractor agrees—

"(b) *to submit* to the Contractor applications for payment *in such reasonable time* as to enable the Contractor to apply for payment under Article 24 of the General Conditions." (Italics ours.)

Article 24 of the general conditions of the main contract provides, in substance, that the general contractor shall submit to the architect progress estimates of the work performed by it, inclusive of the work of the subcontractor.

Construing the above provisions, we are of the opinion that it was the duty of the subcontractors to submit to the plaintiff progress estimates of the work performed by them, so that the plaintiff could, in turn, include such estimates in its application for payments, under the general contract. This they failed to do.

Even though the subcontractors failed in this respect, the privilege was accorded them, under paragraph (h) of section 5 of the subcontract, to demand payment for their work as far as executed *and fixed in place,* notwithstanding the architect's failure to issue a certificate for payment to the general contractor. But there is nothing in the record to show that such demand was made or that the steel was fixed in place.

True, Estrade testifies that on one occasion he asked Mr. Richard Farnsworth for a payment, and that Farnsworth told him that *no* payments were due the defendant subcontractors, because none of the steel was fixed in place as required by the contract. The time when the demand was made or the amount claimed as due is not shown. Farnsworth denies that Estrade ever made a demand for payment, and we readily accept Farnsworth's testimony as genuine.

Defendants, having alleged a default on plaintiff's part, had the burden of proving it. The fact that they unloaded 214 tons of steel during March and April, 1932, for which they had not been paid, is insufficient to prove a default by plaintiff, in view of the terms of the subcontract.

Since we hold that plaintiff was not in default of the subcontract, it is unnecessary to consider the legal conclusion urged for by defendant surety company.

Next, it is charged by the surety, in which plea Estrade joins, that Richard Farnsworth, of the plaintiff corporation, illegally conspired with Cotton, one of the partners, to disrupt the defendant copartnership and hire Cotton for plaintiff's own account; that the alleged scheme to defraud the bonding company was perpetrated by plaintiff and Cotton, and the surety was falsely notified on June 24th that the subcontractors had abandoned their work, when, in truth, no abandonment had taken place.

We find this charge to be groundless. On the contrary, we are of the opinion that the plaintiff did everything within its command to foster the carrying out of the subcontract by the defendants. It co-operated with the surety company, and immediately notified that company of all actions of the defendant partners, in furtherance of the protection of the surety's interest in the job.

The fact that the plaintiff hired Cotton to work for it on the day following the default is evidence of the good faith of plaintiff in attempting to minimize the damage resulting to it by reason of the breach of contract. The contract carried a penalty of $50 per day, liquidated damages, against the subcontractors for any delay which they might have caused in the completion of the work, and it was wise and prudent action on plaintiff's part to continue Cotton and his workmen, in order to insure that no delay in the work would be entailed. It is granted, however, that, inasmuch as the surety had the option, for one day after notice of the default, to take over the work, plaintiff, in hiring Cotton and the men on the job, exposed itself to possible loss in the event the surety had exercised this privilege. But the surety did not avail itself of such right, but, on the other hand, by letter, written on June 27, 1932, advised that it "could not, under any such

circumstances, undertake to complete this job."

Having concluded that the defendant partners and the surety company are liable, there remains to be determined the extent of their liability and certain alleged errors complained of, which are personal to each appellant.

■ Estrade filed an exception of vagueness in limine, which was overruled, and claims that the district judge erred in his ruling. An examination of the petition discloses that it is sufficient and complete, and the defendant could safely answer thereto intelligently and without being taken by surprise upon the trial. The information desired by the exception amounts to a request for plaintiff's evidence. There is no showing here that Estrade was injured by the lower court's decision. Great latitude should be given district courts in matters concerning dilatory pleas and exceptions and, in the absence of flagrant abuse of discretion and resulting prejudice, their action is final.

■ Estrade further claims that the court below erred in finding him liable in solido with Cotton and Fricke. He asserts that Estrade, Cotton & Fricke was an ordinary copartnership and not a commercial one.

This copartnership was formed for the purpose of entering into the subcontract with the plaintiff. The work to be done was unloading of steel and tying it in place.

Article 2825 of the Revised Civil Code defines commercial copartnerships to be those formed: "1. For the purchase of any personal property, and the sale thereof, either in the same state or changed by manufacture. 2. For buying or selling any personal property whatever, as factors or brokers. 3. For carrying personal property or passengers for hire, in ships, vessels or any other vehicles of transportation."

It is manifest from a reading of the article that a copartnership formed for doing construction work on a building such as this does not fall within any of the classes defined. Therefore it is held that Estrade, Cotton & Fricke is an ordinary copartnership. The above article of the Code has been many times construed, and the cases of J. T. Gibbons, Inc., v. S. & B. Stable (La.App.) 144 So. 641; National Oil Works, Inc., v. Korn Bros., 164 La. 800, 114 So. 659; Ahrens & Ott Mfg. Co. v. Ideal Plumbing Company, 12 Orleans App.

33, and Green v. Hawkins (La.App.) 144 So. 271, are abundant authority for our conclusion.

■■ In finding that Estrade, Cotton & Fricke is an ordinary copartnership, it follows that Estrade is not bound in solido for the debts of the copartnership (article 2872, R.C.C.), but only for one-third or his virile share (article 2873, R.C.C.). Yet he is liable in solido for costs of the lower court. Article 2087, R.C.C. J. T. Gibbons, Inc., v. S. B. Stable, supra.

Estrade finally postulates that he is entitled to judgment on his reconventional demand. He avers damage because of certain delays by the plaintiff in the progress of the work. The evidence fails to show how he has been damaged, and, furthermore, there is nothing exhibiting unreasonable delay in Estrade's work due to fault of the plaintiff. The reconventional demand is without merit.

■ The defendant surety company, in its answer, has set forth that, if judgment is cast against it on the bond, as surety, it is entitled to judgment against Estrade, Cotton & Fricke, as principals, and calls these defendants in warranty. The district court did not pass upon this plea.

The call in warranty should have been sustained. Preliminary default judgments were rendered against the defendants in warranty on June 26, 1935. However, while the surety bond is offered in evidence, the record fails to show that the application of the defendants in warranty for the surety bond was ever offered or admitted. Under these circumstances, we find that, by virtue of articles 3052, 3053, and 3057, R.C.C., the surety company is legally subrogated for the amount which it is compelled to pay by reason of the judgment herein rendered against it, to the rights of the plaintiff, and against the defendant principals on the bond, each one being liable for his virile share.

The demand for attorney's fees, claimed by counsel for the bonding company, is not sustained by the evidence, and is therefore disallowed.

Finally, it is urged by counsel for both appellants that the plaintiff has failed to prove damages in the amount alleged, resulting from the breach of the subcontract. We are unable to agree with this contention. The record shows that all items charged by plaintiff represent either actu-

al expenses incurred or liquidated damages specifically covered by the subcontract.

The bonding company vigorously attacks the allowance of the item of $809.95, representing amounts paid by plaintiff to employees of the subcontractors for labor prior to the default: It suffices to say that the record shows that laborers having claims amounting to $528.55 recorded liens against the work in the Mortgage Office of Jefferson parish, and that counsel stipulated that such was the case. Conceding the soundness of the position of the bonding company, the damage proved by plaintiff is $1,604.25, and the liability on the bond is limited to $1,000. Therefore, reducing plaintiff's claim by $300 will not affect the result with respect to the bonding company. Of course, this point urged by the surety is not available to Estrade, as plaintiff offered in evidence written subrogations to the rights of all laborers paid by it amounting to the sum sued for.

The surety claims that the lower court erred in awarding plaintiff 10 per cent. attorney's fees of the amount of the judgment against it. This point is without merit under Act No. 225 of 1918.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the lower court be amended so as to make defendant Herman J. Estrade individually liable as an ordinary partner for his share or proportion of the claim of plaintiff, i. e., one-third thereof, and liable in solido for the costs of the lower court.

It is further ordered that the judgment be amended as follows: That there now be judgment in favor of Fidelity & Deposit Company of Maryland, plaintiff in warranty, and against Herman J. Estrade, Edward F. Cotton, and Henry Fricke, defendants in warranty, for their virile share or proportion of the claim of plaintiff in warranty, i. e., one-third each of the sum of $1,100, and that defendants in warranty, Herman J. Estrade, Edward Cotton, and Henry Fricke, be further liable in solido for the costs of plaintiff in warranty in both courts.

In all other respects the judgment appealed from is affirmed; R. P. Farnsworth & Co., Inc., to pay the costs of appeal incurred by Herman J. Estrade; costs of appeal of R. P. Farnsworth & Co., Inc., to be borne by Fidelity & Deposit Company of Maryland, appellant.

Amended and affirmed.