This is an action brought by Williams Lumber Company, Incorporated, for a balance of $1,437.99 alleged to be due for certain lumber sold under written contract to Stewart Gast 
Bro., a partnership, the individual members of which are Stewart P. Gast and Aubrey B. Gast. The partnership and the individual members are made defendants. They admit that there was a contract and that the amount sued for represents the proper price for certain lumber which was delivered to them, and that the said price has not been paid, but they aver that plaintiff breached the contract by failure to make timely deliveries of other lumber covered by it, and that as a result of this breach they, defendants, found it necessary to purchase other lumber at higher prices and thus sustained damage in the sum of $2,153.44. They take the position that their claim for damages more than off-sets the claim of plaintiff corporation, and, assuming the position of plaintiffs in reconvention, they pray for judgment against plaintiff in the sum of $715.95, which they aver is the difference between the amount of the claim of plaintiff and the amount of their counterclaim.
By agreement, Gast Bro. deposited in the registry of the Civil District Court $1,700 to secure the payment of plaintiff's claim with interest and costs in the event they should ultimately be cast.
While the case was pending in the District Court, plaintiff corporation went into liquidation and its affairs were taken over by a partnership composed of Leonard Williams, Robert Leonard Williams, John Rodney Williams and Jessie Carnahan. This partnership was substituted as party plaintiff in the District Court but this fact was apparently overlooked when the judgment was rendered below and that judgment was rendered in favor of the original plaintiff, Williams Lumber Company, Incorporated, and against defendants, Stewart Gast Bro. and the individual members thereof, jointly, severally and in solido, for $1,437.99 as prayed for. The reconventional demand was dismissed.
From this judgment defendants, plaintiffs in reconvention, have appealed and they point out, among other things, that the partnership of which they are members is a commercial one and is not an ordinary partnership, and that therefore the judgment, even if otherwise correct, should not run against them solidarily; that in any event each member of the partnership is liable only for his virile share.
Gast Brother, having secured a contract for the construction of fifty houses in Gentilly Park Subdivision in New Orleans, entered into a contract with Williams Lumber Company of Franklinton, La., for the furnishing by that company of the necessary lumber.
Defendants maintain that the entire contract is set forth in a letter of confirmation which, under date of October 30th, 1942, they sent to the Williams Lumber Company. This letter reads as follows:
"October 30, 1942
"Williams Lumber Co.
"Franklinton, La.
"Gentlemen:
"This will confirm order given to you October 22 for furnishing lumber for fifty houses to be erected in Gentilly Park Subdivision in accordance with the quantities and unit prices on attached list. It is agreed that all materials two inches thick and under will be air or kiln dried, and that deliveries will begin on November 9 and continued until completion of the order at the rate of thirty thousand feet perweek.
"We inclose herewith individual lists of each house numbered consecutively #1 through #50. Please ship items marked 'sills' and 'floor joists' for lists #1 through #22 first, then follow with items marked 'plates and ledgers', 'Beams and lintels', 'ceiling joists', 'bracings', 'rafters' and 'sheathing' on the lists #1 through #20. We will advise shipping schedule on the balance of order within the next week.
"You will note that we have corrected both the total and the individual list to give *Page 775 
the quantity of beveled siding in board measure. This will, of course, produce twice the quantity in surface measure.
"It is agreed that this lumber will be paid for at the end of each week for materials delivered during that week and we apply at the bottom of this order our Priority Rating of AA-4.
"Trusting that you will have no great difficulty in maintaining the schedule outlined above and with kind personal regards, we remain,
"Yours very truly,
"Stewart P. Gast Bro.
"By: S.P. Gast
"Accepted "Williams Lumber Co. "By: Leonard Williams
"Preference Rating A-2 revised to AA-4 to cover lumber is applied hereto under Preference Rating Order No. P-55 Amended, Serial No. 77-064-000275-276NO with the terms of which order the undersigned Builder is familiar.
"Stewart Gast Bro."
Attached to this letter was a list of the lumber contemplated in the contract. Although on this letter there appears the written acceptance of the Williams Lumber Company, it is maintained by the Williams Lumber Company, and by its successors who have been substituted as plaintiffs, that there should be considered as an additional part of the contract another letter dated November 11th, 1942, written by the Williams Lumber Company to Stewart Gast Bro., reading as follows:
"November 11, 1942.
"Stewart Gast Bro., "General Contractors "3801 Frenchmen St.
"New Orleans, La.
"Dear Mr. Gast:
"Next attached is contract for the furnishing of lumber for 50 houses. We will start making deliveries on this lumber tomorrow and trust that we will be able to maintain our promise to your entire satisfaction. We wish, however, that you would bear in mind that should we have long spells of rainy or bad weather this might interfere with our deliveries, this we have considered in signing this contract.
"There was a typographical error in the prices on the 2 x 8 16 ceiling joists. You should have $34, instead of $33. You will note that all of the rest of the 2 x 8's and 2 x 4's have been listed at $34.
"We appreciate this order and it is a very large one. We trust that we may have the pleasure of furnishing you lumber when this contract has become exhausted.
"With all good wishes and kind regards, we are:
"Yours truly,
"Williams Lumber Co., Inc.
"President.
"1; s "Enclosure."
Gast Brother maintain that this letter forms no part of the contract which they say was complete when their letter of October 30th, 1942, was accepted by the Williams Lumber Company, but they assert that even if this second letter may be treated as a part of the contract, still even under the reservations contained in it the failure of the Williams Lumber Company to carry out its contract would not be legally excused.
Since defendants admit the indebtedness for lumber delivered and not paid for, and since, on the other hand, it is conceded that the lumber company failed to deliver lumber at the rate of 30,000 feet per week as required by the terms of the contract, the only question left for consideration is whether, as a result of that failure, the lumber company has made itself liable to plaintiffs in reconvention.
It is contended on behalf of plaintiffs that in spite of the failure to deliver the said quantities of lumber, there is no liability for any one of the following reasons:
(1) Because Gast Brother did not place the Williams Company in default when that company failed to comply with the delivery schedule;
(2) Because Gast Brother themselves breached the contract by failing to pay for the shipments of lumber for which the suit was brought;
(3) That if there was any breach of contract on the part of the Williams Company, Gast Brother waived any right to take advantage of that breach; and
(4) That the failure of the Williams Company to make deliveries in accordance with the contract was caused by one or more of the following causes which rendered the said failure to make deliveries legally excusable: *Page 776 
(a) Gast Brother repeatedly gave instructions as to deliveries which instructions were inconsistent with the provisions of the contract; (b) weather conditions made prompt and regular deliveries impossible; and (c) orders bearing War Production Board priority ratings higher than the rating assigned by that Board to Gast Brother were presented to the Lumber Company, and these orders were necessarily filled by delivering lumber intended for and which would otherwise have gone to Gast Brother.
Gast Brother assert that it was not necessary that the Williams Company be placed in default since it was evident, they say, from the contract itself, that time was "of the essence."
They declare, too, that their failure to pay for the lumber for which the suit is brought resulted only from the fact that at that time, by reason of the breach of the contract by the lumber company, they had been damaged in a sum in excess of the amount due by them to the lumber company.
They further insist that at no time did they do anything which could be construed as a waiver of their right to insist on the carrying out of the contract or as a waiver of their right to claim damages for this breach, or as a waiver of their right to take advantage of the breach without any necessity that the Williams Company be formally placed in default. They say also that they gave no instructions for deliveries otherwise than in strict accord with the terms of the contract, and they maintain that neither weather conditions nor War Production Board priority orders interfered in any way with the deliveries. They say, too, that if the weather did in any way interfere, this was not a legal excuse and that if any such priority orders were received and interfered in any way with the deliveries which should have been made to them, the Williams Company, under regulations of the War Production Board, was required to give notice to them that such other priority orders had been received and must be complied with.
[1] All of these contentions are discussed at length in the briefs and were most ably presented by all counsel in oral argument. We think it unnecessary to discuss all of them at length here because we conclude that whatever rights Gast 
Brother may have had as a result of the first breach, or even as a result of the second, or possibly the third, that is to say when the Williams Company for the first, or the second or the third time failed to deliver lumber at the rate of 30,000 feet per week, whatever may have been their rights then to insist on the terms of the contract or to claim damages for the breach thereof or to cancel their contract, and whether there was then any necessity for a formal putting of the lumber company in default, their repeated failure to forcibly call upon the Williams Company to meet its weekly obligation prevented them from suddenly, and at the last moment, insisting not only that the contract had been breached but that all along there had been no necessity that the Williams Company be placed in default.
[2] Where a contract requires delivery within a certain time, failure to deliver within that time constitutes a passive breach — C.C. Art. 1931, and it is expressly provided in the initial paragraph of C.C. Art. 1933 that where a breach is passive there must be a putting in default before damages may be claimed; that damages "are due from the time that the debtor has been put in default, * * *." Paragraph No. 1 of that Article provides an exception to that rule — "1. When the thing to be given or done by the contract was of such a nature, that it could only be given or done within a certain time, which has elapsed, or under certain circumstances, which no longer exist, the debtor need not be put in legal delay to entitle the creditor to damages."
This is responsible for the commonly accepted phrase "where time is of the essence" and it is clearly established that "where time is of the essence" even though the breach be passive, there need be no putting in default. Chattanooga Car Foundry Co. v. Lefebvre, 113 La. 487, 37 So. 38. Whether time is of the essence is not always easily to be determined, and often the answer to the question depends not upon the terms of the contract itself but upon extraneous circumstances and facts and upon how the parties themselves looked upon the importance or unimportance of the time element.
[3] We do not undertake to decide whether there would have been any necessity that the Williams Company be placed in default had Gast Brother decided to take advantage of the breach of contract when the first breach occurred. But even if time is all-important, the party to whom delivery is due may, by his actions, establish *Page 777 
a course of conduct or acquiesce in delay, and thus estop himself to insist that time was all-important and that there was no necessity that there should be a putting in default.
The following facts are interesting in this connection and must be noted: The contract was dated October 30, 1942, and it confirmed a verbal order of October 22, 1942. It required shipment of 30,000 feet of lumber each week and, apparently, that the shipments begin at once. When deliveries were commenced they were made as follows:
Board Ft.
First week ending November 13 4504 Second week ending November 20 9512 Third week ending November 27 6981 Fourth week ending December 4 18296 Fifth week ending December 11 6226 Sixth week ending December 18 19518 Seventh week ending December 25 7244 Eighth week ending January 1 7130 Ninth week ending January 8 16102 Tenth week ending January 15 13796 Eleventh week ending January 22 17312 Twelfth week ending January 29 Thirteenth week ending February 5 25073 Fourteenth week ending February 12 36006 Fifteenth week ending February 19 19085 Sixteenth week ending February 26 9632 Seventeenth week ending March 5 7708 ------- Total Delivery for seventeen weeks 224125
There is in the record no letter or other document which can be considered as a demand for performance until as late as December 31st, 1942, at which time there had been seven weekly deliveries, no one of which had come anywhere near to containing the 30,000 feet required by the contract, and even this letter certainly cannot be considered as an effort to put the Williams Company in default. We quote it in full —
"December 31, 1942
"Williams Lumber Company, Inc., "Franklinton, La.
"Dear Mr. Williams: —
"We are inclosing herewith a check in the amount of $742.13 to cover invoices 1189, 1278 and 1284.
"We certainly want to cooperate with you and keep money rolling to you as fast as you can roll the lumber to us. The fact is tho, that unless we can get enough lumber to make some payments pretty soon, money is going to be pretty scarce. Please try to pile it in on us this coming week, and even over this weekend if possible.
"With kind personal regards, and best wishes for the new year, I remain
"Yours very truly,
"(in ink) S.P. Gast "S.P. Gast."
Mr. Stewart Gast in his testimony states that Williams Company "failed to make deliveries according to schedule" and in connection with his verbal request that the Williams Company comply with its contract, Mr. Gast testified as follows:
"Q. Mr. Gast, what steps did you take when the Williams Lumber Company failed to make the deliveries according to schedule? A. Well, we did everything in the world we know how to encourage him to do that. We phoned him long distance, wrote him; I made trips to the country and talked to him, and he would give us some reason why he had been behind and admit he had done badly by us, and he was going to do better this week or the next, we could have plenty of lumber, and always put us off from week to week on the promise we would have lumber. We believed him and thought he would give us the lumber."
But there is offered in evidence no letter which can in any sense be considered as an attempt to place the Williams Company in default until one written on March 3rd, 1943, and this one was written only during the week in which the last of the deliveries was made and was written the day after the Williams Company had written to Gast. Brother demanding payment for the lumber which had been delivered. In that letter, from which we have not quoted, Gast Brother stated that they were entitled to claim damages from the Williams Company, and they offered to waive their claim and to pay in installments the amount which was then due, and on which this suit is based if the Williams Company would make prompt deliveries in the future.
The testimony of Mr. Gast, and there is considerable other testimony to the same effect, certainly does not show an attempt to place Williams Company in mora — quite the contrary, for while it does show that *Page 778 
that company was not making deliveries in accordance with the contract, and while it does show that Gast Brother protested, they did nothing more than to ask the Williams Company to do better in the future.
If it be conceded that by the terms of the contract it was made evident that time was of the essence and that if, therefore, upon the breach of the contract there was no necessity that there be a placing in default, there is no reason why the party damaged could not have waived the rights resulting from the breach and could not have asked the party in default to make every effort to carry out the contract from that time on, and this is exactly what Gast Brother did. They did not exercise any rights which may have come to them by the breach but merely asked the Williams Company to try to catch up with the schedule of deliveries, and they did this not once, but week after week.
[4] With the exception of one week, the Williams Company failed each week from the very first to the very last a period of seventeen weeks. By continuing to accept deliveries after each breach, and by urging the Williams Company to continue performance of the contract, Gast Brother waived any rights which might otherwise have resulted from each breach.
We find in this connection an interesting case — Tremont Lumber Co. v. Robinson Lumber Co., 160 La. 254, 107 So. 101, 102. In that case our Supreme Court quotes with approval from Page on Contracts, Sec. 1502, p. 2312, as follows: " 'If the promisor has made default in performance with respect to the time thereof, and the promisee subsequently permits or urges him to continue performance, or accepts performance thereafter, or accepts payments made in performance, or otherwise treats such contract as still in force, such breach is waived.' " (Italics by Supreme Court.)
Counsel for Gast Bro. insist that the facts of the Tremont Lumber Co. case are easily distinguishable from those in the case at bar. We are unable to see the distinction. There, the Tremont Lumber Company agreed to sell and deliver to the Robinson Company certain lumber. The contract required that shipment be made "promptly". The lumber was intended for naval purposes during the last World War. Several months after the deliveries should have been made and after there had been conversations and correspondence urging the Tremont Company to make deliveries, the Robinson Company wrote to the Tremont Company as follows: " 'You have had the order since August 2d, and at the time it was placed by our Mr. Robinson, promise was made that it would be shipped in 30 days. It is now 90 days, and not a car has moved, though you wired us on the 14th of October giving us car number, which we communicated to the consignee. There is only one thing that will possibly let us out of this, and that is the immediate shipment of the entire order, and we are going to confidently expect your advice that this has been done within the next few days.' "
Later, when the Tremont Company attempted to collect for such lumber as had been delivered, the Robinson Company insisted upon its right to off-set, pro tanto, the claim of the Tremont Company by its own claim for damages for breach of the contract to deliver the lumber promptly. Our Supreme Court pointed to the letter which we have quoted and said: "When this letter was written, all of the facts were before defendant that would have justified a rescission. This letter does not show an attempt to rescind the contract, but, to the contrary, it shows an intention to insist upon performance. In fact, the letter is a demand for performance, and, reasonably construed, gives defendant at least a few days longer within which to comply with the contract. Therefore, notwithstanding the causes for rescission, which had occurred, defendant elected to insist upon the performance of the contract, and to allow defendant a few days longer within which to perform, and, under the authorities above cited, by its election, it waived the breach."
If the writing of that letter constituted a waiver, then we cannot see why the actions of Gast Brother here, as evidenced by their letter from which we have quoted, and as evidenced by the testimony of Mr. Gast, should not be construed as a waiver of any rights which may have resulted from the earlier breaches. And if Gast Brother should be considered as having waived any rights resulting from the earlier breaches, and if those earlier breaches were repeated from week to week, *Page 779 
surely it was necessary, before any action could be begun by Gast Brother as a result of any later breaches, that their change in attitude be definitely made known to the Williams Company. It was necessary that they actually place them in default and notify them that in future the terms of the contract would be insisted upon.
It is true that because of Section 1 of Article 1933 of our Civil Code it is unnecessary to place in mora a party who has defaulted on a contract on which time is of the essence but there are many situations in which the rights of a party under a contract come into existence without the necessity of a placing in default, and in which it has been held that by doing anything which indicates an intention to waive the rights which the breach may have created, the party whose acts constituted a waiver must thereafter give notice that in the future no more defaults will be permitted. For instance, where a lessee owes rent monthly on a certain date, there can be no doubt of the absolute right of the lessor to act immediately when payment is not made on that date and yet it is well established that if the lessor, by accepting payments several days late, has lulled the lessee into a belief that there is no objection to the delay, the lessor thereafter may not, without express notice, take advantage of the fact that the rent is not promptly paid. See Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926, 15 Ann.Cas. 251. This principle has been approved in other situations. In Cantu v. Fenner, Beane Ungerleider,181 La. 743, 160 So. 399, 400 it is discussed and applied. There the court said: "The law is clear and the authorities are uniform to the effect that, although the broker in the written contract with his customer has reserved the right to sell, without notice, the stock carried by him on margin for his customer, the broker is estopped * * * when the acts, declarations, and conduct on the part of the broker have been such as to lead the customer * * * to believe that the broker would not exercise his right to sell without giving reasonable notice of his intention to do so."
The court also said: "This same theory of estoppel has been invoked against insurance companies which, on a number of occasions, have accepted premiums beyond the date on which they were due, and subsequently claimed that the policy was lapsed or forfeited, because on one occasion the insured failed to pay the premium within the time specified in the policy. * * *"
We see no reason why this equitable estoppel should not be applied here.
[5, 6] Even if the letter of March 3rd can be considered as an effort to place the Williams Company in default, Gast 
Brother were themselves in default when that letter was written. There may not be a putting in default where the party who attempts to put the other in default has himself breached the contract by failure to make payment.
"Nondelivery — Excuse — Purchase price unpaid. — The seller is not bound to make a delivery of the thing, if the buyer does not pay the price and the seller has not granted him any term for the payment." C.C. Art. 2487.
" * * * It is well settled that a buyer cannot maintain an action for damages for the seller's failure to fulfill a contract to sell and deliver goods, if the buyer was in default by failing to pay promptly, at the time stipulated, for the goods that were delivered under the contract. * * * " Smith v. Anders, 148 La. 474, 87 So. 241, 243.
[7] There is another question which we have not yet mentioned. It is presented by the fact that Gast Brother insist that when the delays in delivery were discussed with Mr. Williams he authorized them to go into the market and buy such lumber as they needed and to charge the loss to the Williams Company. This is denied by the Williams Company, and on this question of fact our brother of the District Court has found with the lumber company. We find nothing in the record which justifies a conclusion that he was obviously in error.
It is not necessary to consider any of the other contentions made by the parties. Because of the waiver of any rights which may have come into existence, Gast Brother have lost those rights and cannot insist upon them now.
[8, 9] Of course, inasmuch as the new partnership has been substituted for the original plaintiff, the Williams Lumber Company, the judgment must be amended so as to run in favor of that partnership *Page 780 
and the individual members thereof. So far as the partnership, Gast Brother, is concerned, it seems quite clear that that partnership is not a commercial one. See C.C. Articles 2825 and 2826. In R. P Farnsworth Co., Inc., v. Estrade, Cotton 
Fricke, La. App., 166 So. 160, 167, we held that a partnership "formed for doing construction work on a building * * * is an ordinary copartnership." See also the following cases: J. T. Gibbons, Inc. v. S. B. Stable, La. App., 144 So. 641; National Oil Works, Inc., v. Korn Bros., 164 La. 800,114 So. 659; Ahrens Ott Mfg. Co. v. Ideal Plumbing Co., 12 Orleans App. 33, and Green v. Hawkins, La. App., 144 So. 271. The result is, of course, that the members of that partnership are not liable solidarity, each, under Articles 2825, 2872 and 2873 of our Code, being liable only for his virile share.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of the partnership composed of Leonard Williams, Robert Leonard Williams, John Rodney Williams and Jessie Carnahan and in favor of the individual members thereof, and against the defendants, Stewart Gast Bro., an ordinary partnership composed of Stewart P. Gast and Aubrey B. Gast, in the sum of $1,437.99, and against the said individual members of the partnership each for one-half of the said amount, together with legal interest thereon from judicial demand until paid, and for all costs.
It is further ordered, adjudged and decreed that there be judgment on the reconventional demand in favor of the said partnership composed of Leonard Williams, Robert Leonard Williams, John Rodney Williams and Jessie Carnahan, and in favor of the individual members of the said partnership, and against the plaintiffs in reconvention, Stewart Gast Bro., and the individual members thereof, Stewart P. Gast and Aubrey B. Gast, dismissing the said reconventional demand.
And it is further ordered, adjudged and decreed that as thus amended the said judgment be and it is affirmed.
Amended and affirmed.