CONGREGATION OF THE ROMAN CATHOLIC CHURCH OF ASCENSION *v.* TEXAS & P. RY. CO.

*(Circuit Court, E. D. Louisiana.* February 18, 1890.)

1. RELIGIOUS CORPORATIONS—EXPIRATION OF CHARTER—REINCORPORATION.
    The property of a religious corporation, dissolved by reason of the expiration of its charter, vests in its members, who may reincorporate; and the new corporation may sue for breach of a condition relating to the premises, especially where it has been in possession and managed the property without objection for many years.
2. RAILROAD COMPANIES—GRANT OF RIGHT OF WAY—CONDITION—LACHES.
    A suit to annul a grant of a right of way to a railroad for failure to comply with a condition to maintain crossings and proper drainage, is not barred by laches, as the covenants are continuing.

In Equity. On demurrer to the bill
*Rouse & Grant,* for complainant.
*Howe & Prentiss,* for defendant.

PARDEE, J.   The complainant alleges that it is a body corporate, composed of all the residents of the parish of Ascension, of the state of Louisiana, professing the Roman Catholic faith, and the citizens of such state, organized under the general corporation laws thereof; that, by an act of the legislature of the state of Louisiana approved March 1, 1856, a corporation was created under the name and style of "The Congregation of the Roman Catholic Church of Ascension," to be composed of all the white Roman Catholics of the parish of Ascension, with the corporate power to acquire and hold property, and administer the same, for the use of the Roman Catholic religion, for charity, and the encouragement of education; that said corporation, by the terms of said act, was to continue for a period of 20 years from this date, and that the same was duly organized; that subsequently, and prior to the expiration of said charter, the legislature of the state of Louisiana reincorporated all the white Roman Catholics of said parish of Ascension under the like name and style, of "The Congregation of the Roman Catholic Church of Ascension," and created the same a body corporate for a term expiring on the 1st day of March, 1881, which corporation was duly organized; that this last-named corporation came into possession of all the property of the original corporation, and continued to hold and administer the same for the uses and purposes designed by the founders, besides acquiring other property, by purchase, donation, and otherwise, which it administered for the same uses and purposes for the whole term of said act; that on the 15th day of January, 1870, the corporation last named, then being owner and in possession of the property described in the bill, executed an act of donation in and by which said corporation granted, relinquished, and conveyed unto the New Orleans, Mobile & Chattanooga Railroad Company a right of way of 500 feet in width across and upon said lands described in the bill; that, in granting the right of way on the said lands, said corporation conferred valuable rights on said railroad company without any consideration, greatly to the injury of its property, upon condition, however, that said railroad company would keep open the necessary drainage and roads, and build bridges over the crossings of the railroad, besides roads for the uses of said property, and, inasmuch as said corporation did not possess the power to alienate its lands, the said railroad company undertook and bound itself to obtain the ratification of said act of donation by the legislature of the state; that the said New Orleans, Mobile & Chattanooga Railroad Company entered upon the property granted as aforesaid, and constructed an embankment some 10 feet high across the said property, without constructing crossings to afford a passage from one part of said church property to the other; that two small canals, constructed for the drainage of said lands, daily in use for that purpose at the date of said act of donation, were filled up and obstructed by said embankment, leaving the front land, upon which are located the church edifices, and other valuable improvements, undrained; that, some time in the year 1881, the said donee, or its successor, closed St. Patrick street, through which, up to that time, said church lands were accessible by a crossing maintained at the head of the street,—thus

leaving the church lands on the swamp side of the line of the railway inaccessible; that said church corporation, its members and officers, protested from time to time against such acts violative of the stipulations and conditions contained ·in the grant aforesaid, but the said donee and its successor, the present defendant, neglected and refused to comply with their obligations in the premises, in consequence of which orator's property has been greatly injured and damaged; that the defendant, the Texas & Pacific Railway Company, acquired all the rights granted to the New Orleans, Mobile & Chattanooga Railroad Company some time in the early part of the year 1881, by deed of transfer, and immediately took possession of the lands granted for a right of way as aforesaid, and has remained in the possession and use and enjoyment thereof ever since, and has, in law, become obligated to perform all the stipulations contained in said grant; that complainants made demand on the defendant, about May 1, 1889, requiring it to comply with each and every one of said stipulations, and that the defendant refuses and neglects, as it long has done, to perform its obligations in the premises; that subsequent to the expiration of the charter of 1856, aforesaid, said property remained in the possession of, and was administered by, the officers of the Roman Catholic Church of said parish, as the representative of the corporation, by consent of all those having any interest therein, until the 12th day of February, 1883, at which date said corporators organized themselves into a body corporate, under the general law of the state of Louisiana, by act passed before a notary public, in due form of law, under the name and style of "The Congregation of the Roman Catholic Church of Ascension," to continue for a term of 25 years from said date,—the object and purpose of said corporation being to hold and administer the property as successor of the corporation created by act of 1856, and to conduct the temporal affairs of the church; that officers were duly elected to conduct the affairs of said corporation in accordance with its ordinances, who have ever since conducted its affairs; that said corporation immediately went into possession of all the church property, including that across which the aforesaid right of way was granted, and has ever since held undisputed, open, peaceable, and public possession thereof as owners. And complainant further alleges that, by reason of the failure of the New Orleans, Mobile & Chattanooga Railroad Company, and its successor, the Texas & Pacific Railway Company, to comply with the stipulations contained in the said grant of the right of way, complainant is entitled to have the said grant annulled and dissolved under the provisions of the law of Louisiana, and to recover the losses and damages sustained by reason of such non-compliance, which amounts to the sum of $25,000. The prayer of the bill is for process, etc., and that the court may decree the annulment and dissolution of the act of January 15, 1870, donating the right of way through said land, for non-compliance with the stipulations and conditions therein contained, and direct the defendant to remove all its buildings, road-beds, embankment, rails, ties, and other impediments placed on the land, and to surrender possession of said land; that an account may be taken of damages, and defendant be decreed

to pay the same; and that, in case the court shall grant the defendant time to comply with its obligations in the premises, and in that case, complainant prays that it may be on condition that it pay all damages which have been sustained in the past by complainants through defendant's neglect to comply with the stipulations of said grant of right of way. To this bill the defendant demurs:

"(1) That, by the bill of complaint, said complainant shows no right, title, or interest, legal or equitable, in the premises, to bring this suit, or to have the decree demanded; (2) that it appears, on the face of the said bill, the complainant, even if it have any right, title, or interest in the premises, which is not admitted, have by their laches disentitled themselves to any relief in the premises."

1. "The complainant and its predecessor corporations were *private corporations.*" Rev. Civil Code La. art. 429; Mor. Priv. Corp. § 4. When the corporation chartered by the legislature in 1856, with which defendant contracted, was dissolved by reason of expiration of term, its property and rights vested in its members, who were the white Roman Catholic citizens of the parish of Ascension. "It is well settled that the property of corporations becomes vested in its members upon the dissolution of the corporation." *Burke* v. *Wall*, 29 La. Ann. 38. See, also, *Citizens' Bank* v. *Levee S. C. P. Co.*, 7 La. Ann. 287; *Bacon* v. *Robertson*, 18 How. 480. The common law never prevailed in Louisiana; and, in regard to the matter in hand, there is no distinction to be made between ecclesiastical, charitable, and business corporations; and, in that state, it may be said of all such corporations:

"Equity clearly demands that the property of a corporation of this nature should revert to the shareholders, the original donors, or their assignees, when the trust for which it was granted fails. The fact that the legal title of a corporation to property held by it becomes extinguished by a dissolution is no reason why the beneficial owners should lose their rights. If a man dies holding property in trust, the trust does not abate; but a court of chancery will protect and enforce the rights of the beneficiaries into whosoever hands the property may fall by devise or inheritance. Equity will always protect the rights of a *cestui que trust*, without regard to the strictly legal title; and therefore, when a corporation is dissolved, a court of equity will recognize and protect the equitable rights of the shareholders, for whom the corporate body, as recognized by law, was merely a representative or trustee, and the assets of the dissolved corporation will be treated in equity as a trust fund belonging to the shareholders of the company, subject to the rights of its creditors." Mor. Priv. Corp. § 1032.

The property having thus vested in the members of the defunct corporation, they had a right to reincorporate under the general laws of the state. The new corporation, if it did not take absolute title to the property in question, took the control and administration of it as trustee. The bill shows that it entered into the possession, and has administered the property without objection for many years. It therefore seems clear that in this case the said corporation has the right to represent its members and the property in the pending suit. For a much stronger case, see *Beatty* v. *Kurtz*, 2 Pet. 566, where it is held that—

"If the complainants in the circuit court were proved to be the regularly appointed committee of a voluntary society of Lutherans, in actual possession of the premises, and acting, by their direction, to prevent a disturbance of that possession, * * * there does not appear to be a serious objection to their right to maintain a suit for a perpetual injunction against the heirs of the donor, who sought to regain the property, and to disturb their possession."

2. The contract which is the basis of this suit is a contract with continuing covenants; and a suit to enforce the covenants, or to dissolve the contract for breach thereof, cannot be stale until after the expiration of the term of the contract. The failure of the railroad company to comply with the contract to maintain crossings and proper drainage during the first years of the contract may not have affected the complainant so injuriously but what it preferred submission rather than litigation. This would not cut off its right to have the contract enforced thereafter, when the damages became more onerous. The doctrine of laches, which is sought to be applied in this case, may cut some figure if the contract shall be annulled for breach thereof, and the court undertakes to assess the damages resulting from such breach; and it may then well be that claims for damages arising years before bringing the suit may be declared stale. On the face of the bill, the complainant makes a case for breach of contract within the past year. The demurrer will be overruled.