OYERTON, J.
 

 This is a suit for $125 damages for an alleged breach of a contract. The suit was instituted in the name of the National Oil Works, alleged to be a corporation created and existing under the laws of Mississippi, and authorized to do business in this state. The original petition was amended by substituting the name of the National Oil YYorks & Mill Supplies Company, Limited, for that of the National Oil Works, Inc., and by showing that all three of these names indicate one and the same legal entity,, and that the error was brought about by what is probably an ineffectual attempt, from a legal standpoint, to change the corporate name by an amendment to the charter. The copy of the contract, attached to the petition, upon which the suit is based, is signed by the corporation in the name of the National Oil Works, Inc. The defenses are substantially a denial of plaintiff’s corporate existence, a denial of the contract on the ground that it was not properly signed by plaintiff,- and hence, that defendants had no contract with it, .and that, if any valid contract with, plaintiff existed, the cause of action for its breach has been acquired by the National Oil Works of Louisiana, Inc., and no longer belongs to plaintiff. ■ .
 

 After hearing the case the district judge rendered judgment in favor of plaintiff, as the National OR Works & MR1 .SuppUes. Company, Limited, and against the defendant firm
 
 *803
 
 and the individual members thereof, in solido, for $125, with legal interest thereon from judicial demand until paid. On appeal to the Court of Appeal for the parish of Orleans this judgment was reversed. That court, in passing on the case,. overruled a plea of estoppel, urged by plaintiff, and held that plaintiff had promptly questioned the existence of the National Oil Works or the National Oil Works, Inc.; that no such corporation either de jure or de facto existed at the time of the alleged contract; that there was no cointract between the parties, meaning defendants and the National Oil Works & Mill Supplies Company, Limited, and therefore that there was no contract between them to breach.
 

 The case is now before us on a-writ of review. The ruling by the Court of Appeal on the plea of estoppel, urged by plaintiff, is not assigned by the latter, in its application to this court for a writ of review, as erroneous. But plaintiff assigns as error that the Court of Appeal erred in not applying the principle and holding that a corporation may contract under an assumed or trade name, and in not holding the contract valid, and awarding the damages sued for.
 

 At the outset we may say that we think that the evidence establishes that the National Oil Works, Limited, was incorporated under the laws of Mississippi, and was at the time of the contract authorized to do business in this state, with all the powers and privileges of a domestic corporation. Nor does it appear, as contended for by defendants,' that the National Oil Works & Mill Supplies Company, Limited, has parted with its claim for damages, sued upon herein, though it does appear from the charter of the National Oil Works of Louisiana, Ine.,( a. corporation formed, shortly before this suit was filed for the purpose of acquiring all of the assets of the former corporation, and to pay to the shareholders therein, or to pay to that corporation for the same, a certain number of shares of its own stock. It does not appear, however, that this provision was carried out, but it does appear from an affidavit in the record that the National Oil Works of Louisiana, Inc., gave in exchange, which its charter also authorized it to do, a certain number of shares of its capital stock to the qwners of the entire capital stock of the National Oil Works & Mill Supplies Company, Limited, for .their stock in the latter corporation. While this is suggestive that the National Oil Works of Louisiana, Inc., may have acquired all of the assets of the National Oil Works & Mill Supplies Company, Limited, including the claim in question, yet it does not follow from the foregoing that it did. The latter corporation remained a legal entity notwithstanding the former owned all of its capital stock. Fletcher on Corporations, vol. 1, § 22, pp. 47, 48. And remaining a legal entity, it continues to own its assets until their transfer. Thus, it is said that “a railroad company owning all the stock, and bonds Oof another company does not own the property of the latter, and cannot sue on a cause of action belonging to the latter. » * »” Cook on Corporations (4th Ed.).vol. 2, § 709, p. 1472.
 

 As relates to the remainder of the case, the evidence shows that the National Oil Works & Mill Supplies Company, Limited, acting under the name of the National 'Oil Works, Inc., through its architect, W. C. Keenan, called for bids for the purpose of installing the plumbing and furnishing the material therefor, in connection with the erection of a filling station. Defendants tendered a bid to the architect to do the work for $122. The bid was accepted, and a contract prepared, which was signed by the parties out of the presence of each other. The duplicate copy of the contract, retained by the owner, is signed on the part of the owner as follows: “National Oil Works, Inc.”; and the copy, given to defendants, is signed as
 
 *805
 
 follows: “National Oil Works” — tbe abbreviation, “Inc.,” being omitted from tbe owner's name. Both copies are signed by defendants as follows: “Korn Bros., M. Korn.” Shortly after tbe contract was signed, M. Korn, a member of tbe defendant firm, called upon tbe architect to urge that there was something wrong either with tbe plans and specifications under which bis firm was expected to do tbe work or with tbe bid of bis firm, and expressed bis intention of seeing P. A. Cooney, relative to tbe matter, who was tbe president of tbe company for which tbe work was to be done. After several ineffectual attempts to see Cooney, Korn abandoned all efforts in that direction. Thereafter, when tbe architect discovered that defendants bad not begun tbe work, he wrote them a letter calling upon them to comply with their contract. In reply, defendants wrote tbe architect that up to tbe date of their letter they had no contract “with tbe National Oil Works properly signed” by that company. In reply to this a letter was mailed defendants, signed by tbe National Oil Works, Inc., P. A. Cooney, president, in which tbe contract was declared to be properly signed, and in which it was said that tbe writer of tbe letter bad power to sign tbe contract, and that, unless .defendants complied with tbe contract, it would be relet and defendants would be charged with tbe difference. Defendants failed to comply, and tbe contract was relet to tbe lowest bidder at a loss to plaintiff of $125. Tbe evidence further shows that tbe National Oil Works & Mill Supplies Co., Limited, at tbe time tbe contract was entered into with defendants, had been doing business in tbe city of New Orleans, where tbe work was to be done, for a number of years, under the name of the National Oil Works, Inc., instead of tbe correct name of the company; that all contracts let for the erection of tbe filling station bad been signed in that name; that plaintiff at no time pointed out in what particular respect the contract was improperly signed; and that the abbreviation, “Inc.,” at tbe end of tbe name used by plaintiff, was accidentally omitted in tbe copy of the contract in defendants’ possession.
 

 While defendants were probably influenced in taking their position as to tbe correctness of tbe signature of plaintiff to the contract by the fact that their bid was too low, still they do not rely upon this as a defense, but upon tbe alleged fact that they bad no contract with plaintiff, the National Oil Works & Mill Supplies Co., Limited. Tbe facts of tbe case resolve tbe issue to be decided principally into whether a corporation may contract in an assumed name or a name acquired by user or reputation, in tbe absence of a statute prohibiting it from doing so'. In Fletcher on Corporations, vol. 2, § 740, p. 1687, it is-said:
 

 “The rule that a corporation has but one legal name and that that one is the name formally conferred upon it by the state does not meara that the corporation can never act under a different name, nor require that such legal name be used ipsissimis verbis in order for the corporation to be bound. While it may be desirable that a corporation act only by its legal name, there being no statutory provision that it must do so, a statement that it is only by such a name that the corporation can ever be bound would not have the support of the authorities generally- Opposed to any such idea is the rule that a corporation may assume a name, just as a natural person may, for the purpose of carrying on its business, entering into a contract or executing or receiving a conveyance, unless there'is some statutory provision to the contrary. If a note or deed is executed by a corporation under an assumed name, it is just as much bound as if it had used its proper name, and the same is true of any other contract. A contract entered into by or with a' corporation under an assumed name may be enforced by either of the parties, if the identity of the corporation is established by- the proof.”
 

 Among tbe decisions supporting tbe text may be cited Standard Distilling & Distributing Co. v. Springfield Coal Mining & Tile Co., 146 Ill.
 
 *807
 
 App. 144, and W. B. Clarkson & Co. v. Gans S. S. Line (Tex. Civ. App.) 187 S. W. 1106. Both of these cases are closely akin to the present one.
 

 We know of no law in this state prohibiting a corporation from transacting business or contracting under an assumed or trade name. However, Act 64 of 1918 makes it a misdemeanor for any person or persons to transact business in this state, under an assumed name, without first complying with certain requirements, but as appears from section 4 thereof, the act has no application to corporations duly organized under the laws of this state, or to any corporation organized under the laws of any other state, and lawfully doing business in this state.
 

 Our conclusion is that the contract was binding on both parties from the time it was signed, and that, had defendants performed it, they could have recovered from the plaintiff herein, the National Oil Works
 
 &
 
 Mill Supplies Co., Limited. In our view the accidental omission of the abbreviation, “Inc.,” from plaintiff’s assumed name, in defendant’s copy of the contract, did not affect the matter. Moreover, that omission was, in effect, corrected, when plaintiff, in its reply to defendant’s letter, under the name of the National Oil Works; Inc., through its president, expressly recognized the contract and called upon defendants to perform it.
 

 The evidence shows that plaintiff has suffered the damages alleged — that is, in the sum of $125 — as shown above. Plaintiff asks for judgment against the defendant firm and its members in solido. Plaintiff is not entitled to a judgment against them in solido, but only to one against, the firm for the amount proven and against the individual members of the firm for that amount jointly, for the firm was . quoad this contract an ordinary partnership doing a contracting business as plumpers. C. C. arts. 2825, 2826, 2872, 2873; Hardeman v. Tabler, Crudup & Co., 36 La. Ann. 555; Hollingsworth v. Atkins Bros., 46 La. Ann. 515, 521, 15 So. 77.
 

 For these reasons, the judgment of the Court of Appeal is annulled and set aside, and the judgment of the district court is amended so as to east said firm of Korn Bros, for said sum of $125, with legal interest thereon from judicial demand, and said M. Korn and A. B. Korn, the individual members of said firm for said amount, jointly, and, as thus amended, the judgment of the district court is affirmed, plaintiff to pay the costs of the appeal, and defendants the costs of this writ and those of the district court.