*877
 
 O’NIELL, Chief Justice.
 

 On February 12, 1916, the Porter-Wadley Lumber Company, an Arkansas corporation, doing business in Louisiana, sold a large area of land in Louisiana to an Iowa corporation, called the German-American Investment Company. In the deed the Porter-Wadley Lumber Company made this reservation:
 

 “The vendor, The Porter-Wadley Lumber Company, retains, reserves, holds, keeps and owns, for a term of thirty-five (35) years, all oil, gas, sulphur and mineral rights of any and every description that may exist or be found in and under the lands herein conveyed, with the right of ingress and egress for the purpose of searching, developing, exploiting and producing said oil, gas, sulphur or minerals, and the right to take water and fuel from the lands for the purpose of such exploitation; with the right to build pipe lines and tanks for the purpose of saving and removing the products that may be found.
 

 “The Porter-Wadley Lumber Company shall pay to the vendee hereunder, his heirs, successors or assigns, one half of all the net revenue that may be obtained from the sale of the oil, gas, sulphur and minerals herein reserved.
 

 “The intention of this clause being that said oil, gas, sulphur and minerals are not included in this sale, and for a term of thirty-five (35) years the Porter-Wadley Lumber Company shall have the right to develop said products, and to sell and remove same subject to the condition that one-half of the net amount in money arising from such sale shall be paid over to the grantee herein, his heirs, successors, or assigns.”
 

 The name of the German-American Investment Company was changed to North American Investment and Development Company. On October 19, 1917, the North American Investment and Development Company sold to W. R. Garrison, and on the same day Garrison sold to W. T. Gleason, 80 acres of the land which the PorterWadley Lumber Company had sold to the German-American Investment Company. The deed from Garrison to Gleason contained the following acknowledgment:
 

 “This sale is made subject to the mineral reservation contained in the deed from the German-American Investment Company to the vendor, W. R. Garrison, which was filed for record in the Clerk’s office of Webster Parish at 2:10 o’clock P. M. Oct. 19th, 1917, for record.”
 

 On November 14, 1917, W. T. Gleason sold to John L. Munn, who is the plaintiff in this suit, ,the 80 acres of land which Gleason had acquired from W. R. Garrison, and which is described as
 
 SE1/^
 
 of NW%' and NE% of SW% of Section 1, T. 22 N., R. TO W., in the parish of Webster. The deed from Gleason to Munn contained the following recognition of the reservation of the mineral rights in the deed from the Porter-Wadley Lumber Company to the German-American Investment Company, viz.:
 

 “Except it is understood that the management of the oil, gas or mineral rights does belong to J. K. Wadley, of Tex
 
 *879
 
 arkana, and half of the proceeds,, the other half to go with this act to the purchaser.”
 

 On May 3, 1917, the Porter-Wadley Lumber Company was dissolved and its charter was surrendered, by a resolution of the stockholders, at a meeting held at the domicile of the corporation, in Texarkana, Arkansas; and three of the stockholders were named as commissioners to liquidate and settle the affairs of the corporation and to distribute the proceeds of its property among its stockholders.
 

 On November 4, 1936, J. K. Wadley, Mrs. Lillian J. Porter and Miss Margaret Porter, who had been stockholders of the Porter-Wadley Lumber Company, signed and recorded in the office of the Recorder of Conveyances, in the Parish of Webster, an affidavit setting forth the •fact that the Porter-Wadley Lumber Company had made the sale of its lands to the German-American Investment Company, under the reservation which we have quoted, and setting forth that the PorterWadley Lumber Company was dissolved on May 3, 1917; and that at the time of the dissolution of the corporation.Miss Margaret Porter was one of its stockholders and was a minor. It was declared in the affidavit that Miss Margaret Porter was born on April 28, 1910, and therefore arrived at the age of majority on April 28, 1931, “and that, inasmuch as prescription did not run against said minor, prescription did not run .against the majors.” Hence it was declared in the affidavit: “Therefore, title to said mineral1 rights under1 the following described lands is vested in the. stockholders of the Porter-Wadley Lumber Company, said stockholders being J. K. Wadley, Mrs. Lillian J. Porter, Margaret Porter, Mrs. W. R. Grim, Emeline Grim Fuller, Loretta Grim Thomas and Joe M. Wilson.” The land described in the affidavit consisted of the vast area which the Porter-Wadley Lumber Company had sold to the Ger-ma'n-American Investment Company, and which, included the 80 acres of land which John L. Munn, the plaintiff in this suit, bought from W. T. Gleason on November. 14, 1917.
 

 John L. Munn, ’therefore, brought this suit, for slander of title, against the former stockholders of. the Porter-Wadley Lumber Company, named in the affidavit which they had recorded. Munn pleaded that the mineral rights which were reserved in the sale made by the PorterWadley Lumber Company to the German-American Investment Company were lost by the Porter-Wadley Lumber Company by the prescription of 10 years, under articles 789, 3529, and 3546 of the Civil Code, and under the doctrine announced in1 the case of Frost-Johnson Lumber Company v.Sailing’s Heirs, 150 La. 756, 91 So. 207, 210, and affirmed in a long list of decisions, the most recent of which was rendered in Vincent v. Bullock, 192 La. 1, 187 So. 35.
 

 The defendants pleaded that the effect of the dissolution of the Porter-Wadley Lumber Company was to vest in the stockholders the title to the property of the corporation, including the mineral rights in contest; and that, as one of the stockholders, namely, Miss Margaret Por
 
 *881
 
 ter., was a minor, the prescription of 10 years was suspended until she arrived at the age of majority, April 28, 1931, not only as to the interest of Miss Margaret Porter in the mineral rights, hut also as to the interest of all other stockholders of the corporation. This plea is founded upon the doctrine of Sample v. Whitaker, 172 La. 722, 135 So. 38, maintaining that, where mineral rights are owned jointly by two or more persons, and one of the co-owners is a minor, the prescription of 10 years, liberandi ’ causa, by which such a servitude is extinguished, is suspended until the minor arrives at the age of majority, — not only as to the interest of the minor but also as to the interest of the major co-owner or co-owners. The defendants pleaded that, under authority of the reservation of the mineral rights, they executed leases on the land in contest and paid half of the rentals or bonuses to the plaintiff in this suit. The payments were $360 on February 20, 1926, $160 on November 30, 1935, $12 on December 28, 1935, and $40 on November 5, 1936. The defendants therefore pleaded that by receiving and accepting these payments the plaintiff acknowledged that the _ defendants were the owners of the mineral rights now in contest. They pleaded also that one of the lessees actually drilled a well for oil and gas on the 80 acres of land belonging to the plaintiff and thereby interrupted the prescription of 10 years. The defendants pleaded, in the alternative, that, if the court should hold that the prescription of 10 years, liberandi causa, was not suspended or interrupted, then the reservation of the mineral rights in the sale made by the Porter-Wadley Lumber Company to the German-American Investment Company on February 12, 1916, constituted a mandate coupled with an interest, and an appointment of the Porter-Wadley Lumber Company and its stockholders as the agents of the German-American Investment Company, and its successors and assigns, including the plaintiff in this suit, for the period of 35 years; and that the agency, therefore, could not be terminated without the consent of the agents before the expiration of the thirty-five years.
 

 The judge of the district court, after trial of the case, gave judgment for the plaintiff, declaring him to be the owner of the mineral rights in and under the 80 acres of land owned by him. The defendants are appealing from the decision.
 

 Counsel for the appellants contended in their oral arguments, and argue in their briefs, that the reservation in the deed from the Porter-Wadley- Lumber Company to the German-American Investment Company constituted a lease of the land for. the production of oil and gas and other minerals, for the term of 35 years. Aside from the question whether this plea is consistent with the plea made in the answer to the suit, that the reservation constituted a mandate coupled with an interest, it would be a matter of no importance if the reservation should be termed a lease, or if it should be termed a mandate coupled with an interest. It was argued by the Porter-Wadley Lumber Company in the case of Childs v. Porter-Wadley Lumber Company, 190 La. 308, 182 So. 516, 518,
 
 *883
 
 that this same reservation constituted a mandate coupled with an interest, and was therefore imprescriptible. Answering the argument, the court said:
 

 “We do not find any merit in the defense that the reservation of the minerals for thirty-five years, with the obligation on the part of the vendor to pay the vendee or assigns one-half of the net revenues derived from the sale of the minerals constituted a mandate coupled with an interest and therefore was imprescriptible.”
 

 In Childs v. Porter-Wadley Lumber Company, the court sustained a plea of prescription of 10 years, acquirendi causa, and therefore found it unnecessary to pass upon the plea of prescription liberandi causa; but the court made no mistake in saying that to characterize the reservation of the mineral rights as a mandate coupled with an interest would not exempt the right from the effect of the prescription of 10 years, liberandi causa. It is well settled that a grant or reservation of the minerals or mineral rights in a tract of land is subject to the prescription of 10 years, liberandi causa, even where it is stipulated in the contract that the mineral rights are granted for a period exceeding 10 years. It was so decided in Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., on rehearing, 151 La. 361, 91 So. 765, and in Bodcaw Lumber Company v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389. These decisions were founded upon article 3460 of the Civil Code, which declares that one cannot renounce the benefit of prescription before it is acquired, and upon article 3549, which declares,' with regard to prescription liberandi causa, that one may invoke the prescription against a title which he himself has created, that is, against an obligation which he has contracted. The term or period for this prescription to take effect may be interrupted, of course, but when it is interrupted it commences anew from the date of the 'interruption. We maintain, therefore, that the prescription of 10 years, liberandi causa, is applicable to the reservation of the mineral rights in contest in this suit, notwithstanding the reservation was said to be made for a period of 35 years, and ' notwithstanding the reservation was made on condition that the party reserving the mineral rights should pay to the owner of the land half of the net revenue that might be ’derived from the sale of the oil, gas, or other minerals.
 

 The appellants’ plea that the prescription of 10 years was suspended during the period from May 3, 1917, when the Porter-Wadley Lumber Company was dissolved, until April 28, 1931, when Miss Margaret Porter, who was a stockholder in the corporation, arrived at the age of majority, is founded upon the doctrine that by the dissolution of a corporation the title to its property is vested immediately in its stockholders. There is evidence in this record that such a doctrine prevails in the law of Arkansas, and there is some evidence to the contrary. But the mineral right that is in contest in this case is not personal property but real estate, and hence the law of Louisiana is the law which governs the transfer of the title. Fletcher
 
 *885
 
 Cyclopedia of the Law of Private Corporations, Permanent Edition, Vol. 17, sec. 8352, p. 171, and sec. 8353, p. 173; Beale’s Treatise on the Conflict of Laws, vol. 2, sec. 223.1 and 224.1, p. 945; Restatement of the Law, Conflict of Laws, ch. 7, sec. 223, p. 314.
 

 According to the law of Louisiana the title to the property of a corporation does not pass immediately to the stockholders by effect of the dissolution of the corporation. The title to real estate belonging to a corporation that has been dissolved and is in liquidation cannot be transferred to the stockholders, or to anyone else, without a written deed, made either by the corporation acting through its liquidating commissioner or commissioners, or by virtue of a judicial decree. Act No. 267 of 1914, Sections 28, 29 and 30; Screwmen’s Benevolent Association v. Monteleone, 168 La. 664, 123 So. 116. As an analogy, a foreign corporation doing business in this state does not. lose its identity or cease to be a legal entity in consequence of all of its capital stock being acquired by another corporation. National Oil Works v. Korn Bros., 164 La. 800, 114 So. 659.
 

 In the repealing clause in Section 74 of the corporation law of 1928, being Act No. 250 of the session of that year, p. 461, it is declared that Act No. 267 of 1914 is not repealed in so far as concerns those parts of the Act of 1914 relating to foreign corporations. The following paragraph in Section 30 of Act No. 267 of 1914, p. 535, seems to be applicable as well to foreign corporations as to domestic corporations, in so far as the law provides that a dissolved corporation shall remain in existence for the purpose of prosecuting or defending suits, of liquidating its affairs, and of disposing of and conveying its property, — viz.:
 

 “All corporations, whether they expire by limitation or are otherwise dissolved, shall be continued as bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to liquidate their affairs, to' dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established.”
 

 The record discloses that five leases were granted by the Porter-Wadley Lumber Company, after the company was dissolved, and that all of the leases were made in the name of the Porter-Wadley Lumber Company in liquidation, represented by the liquidating commissioners. These leases were made, respectively, in 1926, 1928, 1929, 1930, and 1933. Three of the former stockholders of the corporation, including Miss Margaret Porter, joined the corporation, or its liquidating commissioners, as lessors, in the leases made in 1930 and 1933; but the three other leases were made in the name only of the corporation, in liquidation, represented by its liquidating commissioners. It appears therefore that the stockholders considered the title to the real right, now in contest, as being vested in the corporation, in liquidation, long after May 3, 1917, when the corporation was dissolved. It is conceded that the real right now in contest was never
 
 *887
 
 transferred by a deed of conveyance, by the corporation or its liquidating commissioners, or by an order of court.
 

 The appellants cite an annotation in 47 A.L.R. 1361, declaring that, under the civil law as administered in Louisiana, the doctrine that, on the dissolution of a corporation, its property vests in its members, has always prevailed. The cases cited in the footnote are Burke v. Wall, 29 La.Ann. 38, 29 Am.Rep. 316, decided in 1877; Congregation of the Roman Catholic Church of Ascension Parish v. Texas & Pacific Ry. Co., 41 F. 564, decided by the U. S. Circuit Court for the Eastern District of Louisiana, in 1890, and Fleitas v. New Orleans, 51 La.Ann. 1, 24 So. 623, decided in 1899. All of these decisions antedate Act No. 267 of 1914, and none of them is appropriate to the question presented in this case. In Burke v. Wall it was decided that the title to certain cemetery lots belonging to an extinct religious corporation was vested in the members thereof, who could sell the same, in accordance with the customs which they had either expressly or tacitly adopted. In the case of the Congregation of the Roman Catholic Church of Ascension Parish v. Texas & Pacific Ry. Co., the plaintiff was a religious corporation, chartered by an act of the Legislature, and composed of all of the residents of the Parish of Ascension, Louisiana, of the Roman Catholic faith and of the white race. The charter of the corporation had expired by limitation, but a new charter had been granted by an act of the Legislature before the original charter had expired; and it was held that the property of the first corporation had become vestéd in its members, who had the right to be reincorporated, and that the new corporation had the right to sue to annul a grant of a railroad right of way over its property for breach of a condition, especially where the hew corporation had been in possession and in the management of the property without objection for many years. Fleitas v. New Orleans was a suit against the city for certain amounts due under a franchise which the city had granted to Fleitas to construct and operate a sugar shed on a wharf belonging to the city. Fleitas had transferred the franchise to a corporation called the Sugar Shed Company, and the charter of the corporation had expired, although the term of the franchise had not expired. Fleitas claimed that when the charter of the corporation expired the franchise reverted to him; but the court decided otherwise, and, in so deciding, said [51 La.Ann. 1, 24 So. 629]:
 

 “Granting that thereafter [after the expiration of the charter of the Sugar Shed Company] it was not clothed with the status of a legal corporation, and could not pursue actively as such the business which it had previously followed, it could certainly go into liquidation, and in such liquidation the amount due from the city for the sheds would figure as an asset for distribution among the shareholders. It is an error to suppose that the expiration of the charter of a corporation carries with it the destruction of the ownership of the property which the corporation held
 
 *889
 
 ■during its existence: * * * Fleitas, as transferror of the franchise, has no concern or legal interest in whether it should be paid to a corporation or to liquidators. The absence of legal interest in him on the subject-matter would deprive him of all right of entering into any investigation of that question, or of raising any issue as to whether the corporation were alive or dead.”
 

 The Porter-Wadley Lumber Company did not owe any debts at the time of its dissolution; but that fact did not give to the dissolution the effect of a transfer to the stockholders of the property of the corporation. The rule that the property of a corporation,—and especially the real estate,—continues to belong to the corporation after its dissolution until the property is disposed of by the liquidating commissioner or commissioners, or by virtue of a judicial decree, is applicable as well to a corporation that owes no debts as it is to an insolvent corporation.
 

 Our conclusion on this subject is • that, inasmuch as the title to the real right which is now in contest was never vested in the stockholders of the' dissolved corporation, the fact that one of the stockholders, Miss Margaret Porter, was a minor did not suspend the prescription of 10 years, liberandi causa.
 

 Referring now to the defendants’ plea that the prescription of 10 years was interrupted by the drilling of a well for oil or gas by one of the parties holding a lease from the Porter-Wadley Lumber Company, the record discloses, that the well was drilled by the lessee under the lease made in 1926, that the drilling was commenced in the early part of that year, and that the well was abandoned as a dry hole on January 4, 1927. There was no drilling done after that date. This suit was filed on June 2, 1937. Conceding, therefore, arguendo, that the prescription of 10 years was interrupted by the drilling of the well under the lease made in 1926, more than 10 years elapsed between the date of the abandonment of the well and the date on which this suit was filed. At that time the plea of prescription was available to the plaintiff, as owner of the land that was subject to the real right of the PorterWadley Lumber Company.
 

 The plaintiff’s acceptance of the payments made by the Porter-Wadley Lumber Company of half of the rentals or bonuses, on February 20, 1926, November 30, 1935, December 28, 1935, and November 5, 1936, was not a waiver of the plaintiff’s right to plead prescription when the 10 years expired. The acceptance of these payments was merely an acknowledgment that the reservation of the mineral rights in the sale made by the Porter-Wadley Lumber Company to the German-American Investment Company on February 12, 1916, was yet in force when the payments were made; but the acknowledgment that the real rights were yet in force was not an admission that the rights were not then subject to the prescription of 10 years, liberandi causa. By the terms of the reservation, the plaintiff, as owner of the 80 acres of land, was entitled to receive half of the rentals or bonuses received by the
 
 *891
 
 Porter-Wadley Lumber Company for leases granted on the land, as long as the reservation remained in force, notwithstanding the right which was reserved would be subject to the plea of prescription liberandi causa under articles 789, 3529, and 3546 of the Civil Code, when the 10 years would have elapsed.
 

 The judgment is affirmed.