# BAILEY v. PORTER–WADLEY LUMBER CO. et al.

### No. 789.

District Court, W. D. Louisiana,
Shreveport Division.
June 5, 1939.

A. S. Drew, of Minden, La., for complainant.

John B. Files, of Shreveport, La., for respondent.

PORTERIE, District Judge.

Plaintiff alleges that he is the owner of and in actual physical possession of N. E. ¼ of S. W. ¼ and S. E. ¼ of N. W.

¼ of Sec. 29, Tp. 23 N., R. 9 W., Webster Parish, Louisiana, and seeks to cancel an oil and gas lease dated November 29, 1933, executed by defendants in favor of the Louisiana Oil and Refining Company, together with declaration of ownership filed by the defendants November 6, 1936, recorded in Volume 113, page 428.

The plaintiff pleads the prescriptions of ten years acquirendi causa and ten years liberandi causa. The prayer of the petition is that the plaintiff have judgment against the defendant, decreeing that certain oil and gas lease in favor of the Louisiana Oil and Refining Company executed by defendant be cancelled and that the declaration of ownership filed by the defendants November 6, 1936, be cancelled and removed from the record and that there be further judgment decreeing the plaintiff's title to the oil, gas and minerals in said property be recognized and enforced.

The defendants answered, admitting the execution of the oil and gas lease and the recordation of the declaration of ownership showing the dissolution of the Porter-Wadley Lumber Company.

Defendants averred that the Porter-Wadley Lumber Company at one time owned the property; that it sold same February 12, 1916, to the German-American Investment Company, through whom plaintiff holds, and in said deed the following mineral reservation was made:

"The vendor, the Porter-Wadley Lumber Company, reserves, holds, keeps and owns for a term of 35 years, all oil, gas, sulphur and mineral rights of any and every description that may exist or be found in and under the lands herein conveyed with the right of ingress and egress, for the purpose of searching, developing, exploiting and producing said oil, gas, sulphur or minerals and the right to take water and fuel from the lands for the purpose of such exploitation with the right to build pipe lines and tanks for the purpose of saving and removing the products that may be found.

"The Porter-Wadley Lumber Company shall pay to the vendee hereunder, his heirs, successors or assigns, one-half of all the net revenue that may be obtained from the sale of the oil, gas, sulphur and minerals herein reserved.

"The intention of this clause being that said oil, gas, sulphur and minerals are not included in this sale and for a term of 35 years, the Porter-Wadley Lumber Company shall have the right to develop said products and to sell and remove same subject to the condition that one-half of the net amount in money arising from such sale shall be paid to the grantee herein, his heirs, successors or assigns."

The deed, with the above quoted reservation contained therein, was duly recorded in Volume 26, page 374, of the Recorder's Office, Webster Parish, Louisiana.

May 28, 1917, the German-American Investment Company changed its name to the North American Investment and Development Company.

February 8, 1918, the North American Investment and Development Company transferred the property to G. R. Wise, and on September 3, 1919, G. R. Wise transferred the property to H. L. Munn. On March 25, 1924, H. L. Munn sold said property to C. O. Bailey, plaintiff herein, and in this deed H. L. Munn transferred one-half "of whatever minerals he may now have", in accordance with the prior reservation of the Porter-Wadley Lumber Company.

Defendants further show that on February 23, 1926, the plaintiff joined with the defendants in the execution of an oil and gas lease to W. R. Ramsey, under which a well was drilled, December 29, 1926, to a depth of approximately 4700 feet.

It is further shown that on January 5, 1928, defendants executed a lease to C. H. Lyons and others, including the property herein involved, on which property four wells were to be drilled. Later, on June 9, 1930, defendants entered into an oil and gas lease with the Pure Oil Company, said lease being for a period of three years, and on February 28, 1938, defendants executed another lease, to the Arkansas Fuel Oil Company, under all of which leases one-half of the net proceeds were paid to and accepted by the plaintiff.

Defendants further averred that the Porter-Wadley Lumber Company, an Arkansas corporation, was dissolved May 3, 1917, leaving the defendants the owners of the property, one of whom was a minor child, Margaret Porter; and further averred that the plaintiff, having joined in oil, gas and mineral leases, with the defendants, continuously, "is now estopped to question the title of respondents in regard

to said reservation". In fact, estoppel was especially pleaded.

Defendant further averred that the said reservation, in law and in equity, is a leasehold estate for a period of 35 years, and is not subject to the prescription of ten years, but, in the alternative, if the Court should hold that it is not a leasehold estate, but is a mineral reservation purely and simply, then the minority of Margaret Porter and the concurrence by the plaintiff in oil and gas leases from time to time is an interruption of prescription and the plaintiff is estopped to question the rights of the defendants.

The stipulation as made shows that C. Orbin Bailey has been in the physical possession of the surface of the land since March 25, 1924, with full knowledge of the reservation in the deed from the Porter-Wadley Lumber Company to the German-American Investment Company of date February 12, 1916.

It is also stipulated that plaintiff acquired title from H. L. Munn, that H. L. Munn acquired from G. R. Wise, and that G. R. Wise acquired from the North American Investment and Development Company; that the reservation made by the Porter-Wadley Lumber Company was referred to in all of said transfers. It is admitted that an oil and gas lease was made February 23, 1926, to W. R. Ramsey, for a period of three years, and that it was concurred in by the plaintiff.

It is admitted in said stipulation that a well was commenced December 29, 1926, and was drilled in good faith, with due diligence, to a depth of 4750 feet, but that it did not produce oil or gas in paying quantities.

It is further admitted that on January 5, 1928, defendants entered into a lease with C. H. Lyons et al., and that under the conditions of said lease a well was commenced on April 9, 1928, which produced gas in paying quantities until May 19, 1930, from the production of which the said C. Orbin Bailey received royalties, all of which is shown by photostatic copies of checks filed in this record.

It is further shown that a lease was made to the Pure Oil Company June 9, 1930, and another June 19, 1933 to Louisiana Oil Refining Company, and that under the leases C. O. Bailey received half of the net bonuses, rentals and royalties, and that under the lease to the Louisiana Oil Refining Company the said C. O. Bailey was paid by the defendants the following amounts on the following dates: $100, November 5, 1936, $32, December 9, 1935, $240, November 30, 1935, $20, November 5, 1937, and on July 10, 1930, the said C. O. Bailey received a check from the defendants in the sum of $500, which was half the net amount received as bonus under the Pure Oil Company lease.

It is further shown that a check for $200 was received by said plaintiff, April 28, 1938, to cover a rental period of the property under lease to the Arkansas Fuel Oil Company but that said C. O. Bailey has not cashed said check; that he has custody thereof and has not returned same to the defendants.

It is further stipulated that no well was drilled on said property between February 12, 1916, and February 13, 1926, but that an oil and gas well was commenced on April 9, 1928 and completed as a producer during May, 1928, and continued to produce oil in paying quantities until May, 1930.

We have reviewed the stipulations and now reach the other phases of the case.

The depositions of James D. Shaver, James D. Head and J. K. Wadley were taken with reference to the effect of the will of E. E. Porter, deceased, and the dissolution of the Porter-Wadley Lumber Company, an Arkansas corporation. The deposition of Fred E. Koch was taken as to the intention of the parties and the contemporaneous interpretation placed thereon, as to said reservation, the details of which are to be hereafter referred to.

In this case, after original briefs and counter briefs had been filed, there was allowed additionally, upon request of counsel, oral argument. At the conclusion of the oral argument it was suggested that since the principles involved herein were controlled by state law, and since the case in the Supreme Court of Louisiana, entitled John L. Munn v. J. K. Wadley et al., La.Sup., 189 So. 561, was so fully determinative of this case, it were far better policy for no opinion to be written herein until after the Supreme Court of Louisiana, the court of final arbitrament in the matter and whose findings the Federal Court is to follow, should have expressed itself. The Munn case involves exactly the same facts, property of the same source of title, etc., with the single exception that instead of Munn we have Bailey.

The duty of this Court is to apply the legal principles of the Munn case, for the simple reason that the applicable law to property rights is the law of the state of the situs of the property. This has become more generally true, not only as to substantive property rights but as to tort law, commercial law, rules of evidence, measure of damages, etc., since the decision of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, overruling the long-established doctrine of Swift v. Tyson, 41 U.S. 1, 16 Pet. 1, 10 L. Ed. 865.

The transcript of evidence in this case is composed entirely of excerpts taken by mutual consent from the original record of the Munn case, cited above, the case of J. K. Wadley et al. v. W. T. Gleason, La.Sup., 190 So. 127, decided on May 1, 1939, the case of James T. Pruitt v. Porter-Wadley Lumber Company et al., 28 F.Supp. 31, of the District Court of the United States for the Western District of Louisiana, and the case of Childs v. Porter-Wadley Lumber Co., 190 La. 308, 182 So. 516. Not a single witness appeared in person in the Federal District Court.

This case more fully grooves the Munn case because, differently from the Pruitt case decided this day by this Court, it has the two additional points that exploration was had on the property, on which exploration is founded the hope of the defendant to have interrupted prescription liberandi causa, and the second point, that money was received by Bailey on the original reservation of minerals. These two points are fully covered by the decision of the Supreme Court of Louisiana in the Munn case. This opinion embodies and cites the case, John L. Munn v. J. K. Wadley et al., La.Sup., 189 So. 561, decided May 1, 1939, with all supporting authorities therein, as the main base for the judgment now given.

On the identical question raised in this case, which was passed on in the Munn case cited above, the Supreme Court held as follows (quoting from the Childs case, cited above):

" 'We do not find any merit in the defense that the reservation of the minerals for thirty-five years, with the obligation on the part of the vendor to pay the vendee or assigns one-half of the net revenues derived from the sale of the minerals constituted a mandate coupled with an interest and therefore was imprescriptible.'

" * * * but the court made no mistake in saying that to characterize the reservation of the mineral rights as a mandate coupled with an interest would not exempt the right from the effect of the prescription of 10 years, liberandi causa. * * * Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., on rehearing, 151 La. 361, 91 So. 765, and in Bodcaw Lumber Company v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389. [Art. 3460, Civil Code, Art. 3549, Civil Code].

* * * * * *

"According to the law of Louisiana the title to the property of a corporation does not pass immediately to the stockholders by effect of the dissolution of the corporation. The title to real estate belonging to a corporation that has been dissolved and is in liquidation cannot be transferred to the stockholders, or to anyone else, without a written deed, made either by the corporation acting through its liquidating commissioner or commissioners, or by virtue of a judicial decree. Act No. 267 of 1914, Sections 28, 29 and 30; Screwmen's Benevolent Association v. Monteleone, 168 La. 664, 123 So. 116. As an analogy, a foreign corporation doing business in this state does not lose its identity or cease to be a legal entity in consequence of all of its capital stock being acquired by another corporation. National Oil Works v. Korn Bros., 164 La. 800, 114 So. 659.

* * * * * *

"The record discloses that five leases were granted by the Porter-Wadley Lumber Company, after the company was dissolved, and that all of the leases were made in the name of the Porter-Wadley Lumber Company in liquidation, represented by the liquidating commissioners. These leases were made, respectively, in 1926, 1928, 1929, 1930, and 1933. Three of the former stockholders of the corporation, including Miss Margaret Porter, joined the corporation, or its liquidating commissioners, as lessors, in the leases made in 1930 and 1933; but the three other leases were made in the name only of the corporation, in liquidation, represented by its liquidating commissioners. It appears therefore that the stockholders considered the title to the real right, now in contest, as being vested in the corporation, in liquidation, long after May 3, 1917, when the corporation was dissolved. It is conceded that the real right now in contest was never transferred by a deed of conveyance, by the corporation or

its liquidating commissioners, or by an order of court.

\* \* \* \* \* \*

"Our conclusion on this subject is that, inasmuch as the title to the real right which is now in contest was never vested in the stockholders of the dissolved corporation, the fact that one of the stockholders, Miss Margaret Porter, was a minor did not suspend the prescription of 10 years, liberandi causa."

Then, there are two new and additional points, or different angles of the same points, not decided by the Munn case, which it is the duty of this Court to decide by this opinion. These two points are:

I. Will the execution of an oil and gas lease, ten years nine days after minerals were reserved, said land being a cumulation with 400 acres of other land, and a well being drilled on the other land, not adjacent to the land in contest, interrupt running of prescription or start a new prescriptive period?

II. Will joining in a lease and the drilling of a well twelve years after minerals have been reserved on said land, without other interruptions, start running of a new prescriptive period or revive the mineral servitude which was lost?

We believe this question has been answered on two separate occasions by the Supreme Court of this state. First, in the case of La Del Oil Properties, Inc. v. Magnolia Petroleum Co., 169 La. 1137, 126 So. 684, and in the more recent case of English v. Blackman, 189 La. 255, 179 So. 306, 311.

In the last mentioned case, i. e., English v. Blackman, the Court stated: "When English accepted the benefits referred to, the servitudes which he granted were already prescribed. Since they had not been exercised and the running of prescription against them had not been interrupted within the ten-year period after their execution, they expired, became extinct. They were dead things, and the mere acceptance of the benefits of the new lease thereafter did not resurrect them. Accrued prescriptions cannot be 'interrupted,' of course."

In the case of La Del Oil Properties, Inc. v. Magnolia Pet. Co., cited above, the Supreme Court of Louisiana held [169 La. 1137, 126 So. 686]:

"In the recent case of Lewis v. Bodcaw Lumber Company of Louisiana, 167 La. 1067, 120 So. 859, 860, after reviewing all of the authorities upon which defendant company relies in the present case, we came to the deliberate conclusion that a mere acknowledgment in a deed that the land was sold subject to the reservation of mineral rights in the deed to another did not interrupt the prescription of ten years, which was then accruing against the mineral rights so reserved.

\* \* \* \* \* \*

"Article 3520 of the Civil Code declares that: 'Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed.'

"In construing this article, the Supreme Court of this state has held repeatedly that 'the acknowledgment, in order to interrupt prescription, must be specific;' that 'unless the acknowledgment be clear and precise, courts cannot consider it;' and that 'a simple recognition neither disposes of nor changes the state of the thing,' as said by Dumoulin.

"Conger v. City of New Orleans, 32 La. Ann. [1250] 1254; Courtebray v. Rils, 9 Rob. 511; \* \* \* Tyson v. McGill, 15 La. 145.

"The simple acknowledgment or recognition by the owner, Fairbanks, of the mineral reservation of Central Immigration, Real Estate & Loan Company, in the contract and lease from Fairbanks to Bondurant, did not dispose of nor change the state of the servitude. For it is well settled that the acknowledgment of a debt —and a servitude is no more than a debt— in order to interrupt prescription, must be specific, and, unless the acknowledgment is clear and precise, the courts cannot consider it as having the effect of interrupting prescription. We therefore expressly reaffirm in this case the doctrine announced by this court in the Bodcaw Lumber Company case, 167 La. 1067, 120 So. 859.

"It is conceded that the land in dispute had not been drilled within 10 years from the date of the deed from Central Immigration, Real Estate & Loan Company to Fairbanks. This prescription was not interrupted by the later reservation of these minerals in the contract and lease from Fairbanks to Bondurant, and, therefore, had fully run when defendant, Magnolia Petroleum Company, obtained title from Fortuna Oil Company, March 1, 1926. The servitude had become extinct by nonuser on May 7, 1923, and the minerals,

with right to exploit, reverted to the plaintiff, La Del Oil Properties, Inc., which had acquired a fee-simple title to the property in dispute from James A. Evans, under deed of date December 23, 1918, Rev.Civ. Code, arts. 789, 3529, 3546.

"The Palmer Corporation began drilling operations on the S. ½ of S.W. ¼ of section 1, township 19 north, range 4 east, on or about July 7, 1926, and completed a producing gas well on the property on or about August 5, 1926.

"It is contended by defendant, Magnolia Petroleum Company, that, as the Palmer Corporation acquired the right to explore the S.W. ¼ of section 1, township 19 north, range 4 east, through mesne conveyance or assignment from Central Immigration, Real Estate & Loan Company, the drilling of this well interrupted the prescription of ten years liberandi causa relied upon by plaintiff.

"The S.W. ¼ of this section is not involved in this litigation. Nor is there any privity of contract, as far as the record shows, between the Palmer Corporation and defendant company in so far as the S.W. ¼ of this section is concerned. Besides, defendant company has admitted in its answer that there had been no drilling on section 1, which is not contiguous to any other part of the property, within ten years from May 7, 1913, the date of the deed from Central Immigration, Real Estate & Loan Company to Fairbanks.

The two additional points to the Munn case being now determined, we approach the plea of estoppel specially filed by the defendants.

This plea of estoppel has been interposed on behalf of the defendants, based on the fact that after the expiration of the ten year prescriptive period the Porter-Wadley Lumber Company executed certain oil and gas leases for which money was received, rentals were received and some royalty from production, and that on each occasion the plaintiff, C. Orbin Bailey, was paid one-half of same as called for in the original reservation.

This same plea was interposed in the Munn case, above referred to, and the Court, in deciding this point, held as follows: "The plaintiff's acceptance of the payments made by the Porter-Wadley Lumber Company of half of the rentals or bonuses, on February 20, 1926, November 30, 1933, December 28, 1935, and November 5, 1936, was not a waiver of the plaintiff's right to plead prescription when the 10 years expired."

The defendant interposed the further objection that the mineral reservation made in the original deed to the North American Investment & Development Company was in the form of a leasehold estate of which one-half the benefits would go to the defendant and one-half to the plaintiff, and that this constituted a mandate coupled with an interest which was imprescriptible. This same defense was raised in the case of Childs v. Porter-Wadley Lumber Company, 190 La. 308, 182 So. 516, and the Supreme Court then held that it was not a mandate coupled with an interest; but if so, would prescribe in ten years by the prescription ten year liberandi causa.

On three separate occasions, in the Childs case, in the Munn case and in the Wadley case, all cited above, the defendant contended that he was the owner of the minerals and not the owner of an oil and gas lease. As all three suits reported, as well as the two suits pending in this Court, arise out of the same 35-year reservation, it appears to the Court the plea now made by the defendant in this suit, that the reservation is the equivalent of an oil and gas lease, is wholly inconsistent with the previous position taken in the other suits, and anyway, is not borne out by the facts of this case. The reservation has no resemblance to and is not an oil and gas lease. Additionally, the defendant prays to be decreed the owner of the minerals; he is bound by the prayer of his answer.

The question of good and bad faith has been interposed in the answer on behalf of the defendant, but for the purpose of this decision and the law applicable to the plea of ten-year prescription liberandi causa, there is no necessity for a consideration of this position; and furthermore, the defendant offered no testimony to break down the presumption of the Louisiana law that the owner of property is the possessor thereof in good faith. The Supreme Court of Louisiana held this in the Childs case, cited above, and broadened its holding therein to include the principle that the possessor of the surface is also the possessor of the minerals underlying the surface.

Therefore it is quite clear from the La Del Oil Properties case and the case of English v. Blackman, above cited, that

the drilling of a well on property not adjacent to the plaintiff's property, but which was covered by the same oil and gas lease, said well having been drilled after the ten-year prescriptive period had run, in no wise constituted an interruption of the prescription nor did it start the running of a new prescriptive period. As we found from the above cases, the Louisiana jurisprudence is clear that prescription already accrued could not be revived, as it was a dead thing. Therefore, the payments that Bailey received and the royalties that he later received (similarly received in the case of English v. Blackman) in no manner revived the dead mineral servitude.

For the same reasons as given above, the well that was drilled on the plaintiff's property twelve years after the minerals had been reserved and some two years after the expiration of the prescriptive period, without other interruptions having been shown, did not start the running of a new prescriptive period nor revive the mineral servitude which was then lost to the defendants therein.

Accordingly, judgment, upon presentation, will be rendered and signed in full accord with complainant's petition.