## PRUITT v. PORTER–WADLEY LUMBER CO. et al.

### No. 783.

District Court, W. D. Louisiana,

Shreveport Division.

June 5, 1939.

A. S. Drew, of Minden, La., for complainant.

John B. Files, J. H. Jackson, and Jackson & Mayer, all of Shreveport, La., for respondents.

PORTERIE, District Judge.

On February 12, 1916, Porter-Wadley Lumber Company, an Arkansas corporation authorized to do business in the state of Louisiana and actually doing business therein, was the owner of the following lands in Webster Parish, Louisiana, to-wit: E. ½ of S. E. ¼ and S. E. ¼ of N. E.¼ of Sec. 7, Tp. 21 N., R. 9 W. On that date the Porter-Wadley Lumber Company sold the land to German Investment Company, reserving the minerals under the land for a period of thirty-five years. Full recital

of this agreement is given in the case of C. Orbin Bailey against the same defendant company, Bailey v. Porter-Wadley Lumber Co., D.C., 28 F.Supp. 25, this day decided; it may also be found in the case of John L. Munn v. J. K. Wadley et al., La.Sup., 189 So. 561, opinion rendered on May 1, 1939.

On December 27, 1917, North American Investment & Development Company sold said property to W. T. Gleason and on January 5, 1918, W. T. Gleason sold same to James T. Pruitt, the plaintiff herein.

This suit was instituted as a slander of title, or jactitation, suit and the necessary possession and slander was alleged and admitted in the stipulation of facts.

■■■ The defendant, in answering the suit, reconvened, claiming to be the owner of the oil, gas and other minerals by virtue of the reservation made on February 12, 1916 and thereby became plaintiff in the petitory action, and the burden of proof rested on the plaintiff to establish its case by the preponderance of testimony.

There were stipulations as to facts, as follows:

That James T. Pruitt acquired the E. ½ of S. E. ¼ and S. E. ¼ of N. E. ¼ of Sec. 7, T. 21 N., R. 9 W., Webster Parish, Louisiana, from W. T. Gleason, January 5, 1918, which act was duly recorded, etc.; that W. T. Gleason acquired said property from the North American Investment and Development Company on December 27, 1917; that the latter company acquired the property from O. M. Cavin on December 27, 1917; and that Cavin acquired the property from Porter-Wadley Lumber Company on February 12, 1916; that an oil and gas lease was made by the defendants to the Pine Valley Oil Company, and under said lease the lessee drilled a well on the S. E. ¼ of N. E. ¼ of Sec. 7, T. 21 N., R. 9 W., Webster Parish, Louisiana, and drilled said well in good faith to a depth of 2700 feet, which well was abandoned August 15, 1920 because it failed to produce in paying quantities, said lease covering all the property described in plaintiff's petition; that the plaintiff is the owner and in the actual, physical and corporeal possession of the E. ½ of S. E. ¼ and S. E. ¼ of N. E. ¼ of Sec. 7, T. 21 N., R. 9 W., Webster Parish, Louisiana, and is occupying same as his home

at the present time and has occupied same since the year 1918; that his possession thereof has been and is open, notorious, actual, continuous and uninterrupted, with full knowledge of the reservation contained in the deed from Porter-Wadley Lumber Company to O. M. Cavin; that there has been no oil, gas or other mineral produced on said property in paying quantities from the year 1918 to the present time, and no development of same other than the one well drilled in 1920, as above stipulated; that on or about November 4, 1936, there was prepared a certain affidavit signed by J. K. Wadley, Mrs. Lillian J. Porter and Margaret Porter, all of whom were residents of Texarkana, Arkansas, and that said affidavit was recorded in the Conveyance Records of Webster Parish, Louisiana, November 6, 1936.

In this case, after original briefs and counter briefs had been filed, there was allowed additionally, upon request of counsel, oral argument. At the conclusion of the oral argument it was suggested that since the principles involved herein were controlled by state law, and since the case of Munn v. Wadley, cited above, was so fully determinative of this case, it were far better policy for no opinion to be rendered herein until after the Supreme Court of Louisiana, the court of final arbitrament in the matter and whose findings the Federal court is to follow, should have expressed itself. The Munn case involves exactly the same facts, property of the same source of title, etc., with the single exception that instead of Munn we have Pruitt.

■■■ The duty of this Court is to apply the legal principles of the Munn case, for the reason that the applicable law to property rights is the law of the state of the situs of the property. This has become more generally true, not only as to substantive property rights but as to tort law, commercial law, rules of evidence, measure of damages, etc., since the decision of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, overruling the long-established doctrine of Swift v. Tyson, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865.

The transcript of evidence in this case is composed entirely of excerpts taken by mutual consent from the original record of the Munn case, cited above, the case of

J. K. Wadley et al. v. W. T. Gleason, La. Sup., 190 So. 127, decided on May 1, 1939, the case of C. Orbin Bailey v. Porter-Wadley Lumber Co. et al., 28 F.Supp. 25, of the District Court of the United States for the Western District of Louisiana, and the case of Childs v. Porter-Wadley Lumber Co., 190 La. 308, 182 So. 516. Not a single witness appeared in person in the Federal District Court.

There is but one new point, or the additional stress of an old point, made in this case, not covered by the Munn case. It is our duty to consider it.

In the records making up the transcript of evidence in this case are the provisions of the will of E. E. Porter, brought for consideration as to their legal effect. These admitted facts are the following: E. E. Porter, who died in the year 1913, left a will, and under the terms of that will he made the following pertinent stipulations:

"I hereby give and bequeath to J. K. Wadley and Charles W. Porter, or the survivor of them, as Trustees or Trustee, all stock held by me in the Porter-Wadley Lumber Company, the Dorcheat Valley Railroad and my interest in the partnership of Porter-Wadley & Co. (all subject to my wife's interest) for the following purposes:

"1st: To pay the just debts that may be due by my estate, and authority is especially given to said Trustees, or Trustee, to borrow money for this purpose if they, or he, deem it advisable and best to do so, using said stocks as security.

"2nd: If I have any living child or children, to pay to the Trust Company appointed as joint Trustee in Section 7 of this will, or to any successor that may be appointed under Section 9 of this will, the remainder accruing from the dividends and liquidation of said stocks and property for the benefit of my child or children."

It is admitted that with the exception of certain items of property not involved in either one of the two cases, E. N. Porter left all of his property to Margaret Porter in trust, and that under the will and under the laws of the state of Arkansas the trustees were vested with the legal title and Margaret Porter with the equitable title. Defendants, however, making use of the above quoted provisions of the will, contend differently in the case of the stock owned by E. E. Porter in the Porter-

Wadley Lumber Company. It is admitted by all, and there is no evidence whatsoever to the contrary, that the Trustees of Margaret Porter and not she herself received the title to all of the property left in trust for her. The testator specifically directed that after his stock had been used to pay his debts, the remainder was to go to the Trustees of Margaret Porter's trust. Mr. Wadley, one of the defendants and one of the Trustees and Liquidators, testified that they had wound up the estate and made a settlement with the Trust company, meaning with the trustees under the trust created by the will, and this, according to his own testimony, must have been done before the Porter-Wadley Lumber Company was dissolved in Arkansas because he says they wound up the estate of E. E. Porter either two or three years after Mr. Porter's death. Mr. Porter died November 5, 1913, which would fix the date of winding up the estate and turning the residue over to the Trustees of Margaret Porter's estate as either being in 1915 or 1916. The stockholders of the Porter-Wadley Lumber Company did not start their proceedings to dissolve in Arkansas until May 3, 1917.

Defendants, far from proving that Margaret Porter ever got title to any of her father's property, have by their own evidence proved that the trustees of the trust created for her got title to the property. Further than this, Judge Shaver, Chancery Judge of the Sixth District of Arkansas from 1901 to 1923, who has been practicing or on the bench in Arkansas for fifty-four years, testified that the title to the stock in the Porter-Wadley Lumber Company or the property to which it might have been converted was vested by the will under the law of Arkansas in the trustees for payment of debts, the remainder after the debts had been paid going to the trustees under Margaret Porter's trust, with title at all times being in the trustees and never in Margaret Porter.

Certainly the defendants have failed utterly to establish that, even under the laws of Arkansas, the title to any mineral servitude in this case was ever vested in the minor.

It now becomes necessary to refer to the defendants' plea that the prescription of ten years was interrupted by the drilling of a well for oil or gas by one of the parties holding a lease from Porter-Wadley

34

Lumber Company. The stipulation of agreed facts discloses that the well was drilled by the lessee under a lease made in the year 1920 and that the drilling ceased at a depth of 2,700 feet when the well was abandoned, on August 15, 1920, because it failed to produce in paying quantities. There was no drilling done after that date nor is there any interruption claimed other than this.

The drilling of a well interrupted prescription, but as the well was abandoned on August 15, 1920 the ten-year prescriptive period accrued on August 15, 1930, eight years before the filing of this suit, and at which time the minerals had already reverted to the then owner of the land.

Accordingly, judgment, upon presentation, will be rendered and signed in full accord with complainant's petition.