This is a suit in which plaintiff seeks to recover possession of one automobile trailer, or, in the alternative, a money judgment in the sum of $1,990 representing the sale price thereof, together with certain charges in the nature of protest fees and telegraph costs, and $500 as attorney's fees. A remittitur of the sum claimed as attorney's fees was entered prior to judgment.
The defendant, assuming the position of plaintiff in reconvention, prayed for judgment against the plaintiff for damages resulting from the loss of profits on the resale of four trailers, for attorney's fees with respect to the issuance of the writ of sequestration, and for the return of the balance remaining to his credit out of the amount deposited in accordance with the agreement hereinafter set out. In setting up the details of his reconventional demand defendant conceded an allowance of $1,990 in favor of plaintiff, representing the purchase price of the trailer for which plaintiff sought judgment. After trial there was judgment in favor of plaintiff in the sum of $1,990 and in favor of defendant, plaintiff in reconvention, in the total sum of $1,234.50, or, after adjustment and compensation of the said amounts, in favor of plaintiff in the net amount of $755.50, there was further judgment dividing the costs equally between plaintiff and defendant. From this judgment both plaintiff and defendant have appealed.
In March of 1945, plaintiff and defendant entered into a contract, the terms and conditions of which are evidenced in writing by two documents, the first being a letter of defendant directed to plaintiff confirming an oral agreement, and the second being an acceptance and confirmation on the part of plaintiff. We set forth in full the communications referred to as follows:
"Palmer House "Chicago "March 26, 1945
"Mr. T.D. Thomas "Lighthouse Trailers "633 Schubert "Chicago 14, Illinois
"Dear Mr. Thomas:
"This is to confirm our conversation of March 7, wherein you verbally agreed to grant me a dealership for Lighthouse Trailers in this territory.
"You may enter my order for ten Lighthouse Trailers, the first trailer to be delivered within ten days from the receipt of this letter. I would appreciate it if you will make my first delivery a tandem coach. I have several prospects waiting to see a Lighthouse Tandem before they buy.
"As per our agreement, I am enclosing herewith my check for five hundred dollars ($500.00) as a deposit. This deposit is to be held until the tenth trailer is delivered, at which time I am to receive a refund in the form of a credit for this amount on the purchase price of the tenth trailer.
"In event I exercise the privilege granted me to cancel any part of this order, I am to forfeit fifty dollars ($50) per unit on trailers delivered to me up to the time of cancellation. The balance of the deposit is to be refunded in full.
"I regret that I have been unable to send you this confirmation sooner. I returned to Shreveport much later than I had planned, and found myself without a secretary as well as two boys missing from the shop. This, together with my absence has upset my whole organization and I am just now getting my head above water again.
"It was a pleasure for me to go through your factory and I consider your trailers to be outstanding in workmanship, material and appearance. I am looking forward to a successful future in the handling of your line. I wish to assure you of my fullest co-operation and concerted efforts in the distribution of your coaches here. But what I need now is a Lighthouse coach on my lot; but quick.
"Respectfully yours,
"Rogers R. Foster" *Page 542 
 "Lighthouse Trailers Thomas Manufacturing Company Chicago 14, Illinois
-------------------------------------------------------------- Display Room and Factory: 631 Schubert Avenue — Lincoln 6000 -------------------------------------------------------------- Name Foster Trailer Sales Service Date March 28, 1945
Model __________
Address Lake at Spring St. Serial __________
Shreveport 69, Louisiana Color __________
Telephone _____________ ==============================================================
 Acknowledgment of Order
10 Lighthouse Trailer 'Aristocrats' Single Tandem -------- -------- $1345.00 $1495.00 7% Excise Tax 94.15 7% Excise Tax 104.65 -------- -------- $1439.15 $1599.65 2 7:50-16-6 ply Tires 70.00 4 Tires 120.00 ------- -------- $1509.15 $1719.65
 For Resale
"There is an additional deposit of $50.00 on Form WPB 3538. On trailers with trunks, there will be an additional charge as the price has not yet been determined.
"Electric Brakes $53.50 extra, if available.
"Received $500.00 as deposit on 10 units.
"Lighthouse Trailer Co. "V. Hosanna"
In compliance with the agreement plaintiff invoiced and shipped to defendant at irregular intervals between the dates of April 7, 1945, and April 16, 1946, six trailers. The sixth trailer was delivered to defendant by the transport company on April 19, 1946, at which time defendant delivered to the driver of the transportation agency his check in the sum of $1,990 in payment of the invoice price. Within a few minutes following the delivery of the sixth trailer to defendant and his payment therefor by the check above described, the following letter was delivered to defendant:
 "Lighthouse Trailers "Lighthouse Trailer Company "Chicago 14, Illinois
"631 Schubert Avenue The Home of Fine "House Trailers Lincoln 6000 "April 17, 1946
"Foster's Trailer Sales Service "Lake Spring Ave. "Shreveport, Louisiana.
"Dear Lighthouse Dealer,
"We are writing to you at this time in reference to the trailer industry as a whole, but more particularly about our relationship towards you as a Lighthouse dealer and friend. As you well know, things are not bright at your end of this business and needless to say, very, very rough from a manufacturers' standpoint. It has always been our policy to build our business and trailers around the word 'Fairness.' Fairness is not a word to be used lightly since we must realize that todays problems are many. For some time now, we have been trying to devise a means of serving our dealers in the best possible manner; however, *Page 543 
we are now at the point of taking drastic action in regard to this. After careful thought and consideration, we have found that with the present crisis of materials, strikes, etc., no dealer in our organization can hope to receive more than one trailer every six to seven weeks. Now we well realize one trailer in that length of time is neither good business for the manufacturer or the dealer, since no dealer can be expected to put forth his best sales effort on such a small amount of merchandise.
"It has been our custom in the past to accept deposits of $50.00 per coach, not as you well know for any other purpose than evidence of good faith between us as a manufacturer and you as the dealer. Before going further, may we say in all honesty, that we have not taken on any new dealers regardless of who they might be, for many, many months now. Also may we say that at the recent Trailer Coach show, we did not entertain any new dealers nor lead anyone to believe that we were going to take on any new dealers until the present crisis is well over. This again was in fairness to our already established dealers. So much for that.
"Getting back to our new plan, which may seem rather extraordinary to you. We have decided to return all deposits received in the past and now on our books for the purpose of setting up our new arrangements. Upon receiving your old deposit back, please carefully go over this letter once again and decide if you sincerely wish to continue on representing what we believe to be the finest trailer coach built in America and, to borrow a slogan from the auto trade, may be say 'When better trailer coaches are built, Lighthouse will build them.'
"Write to us how you feel about this matter, and perhaps enclose your deposit in the amount of $500.00 per coach on an order of not lot less than ten or $5000.00 minimum. As stated in the earlier part of this letter this may seem rather harsh at this time, but I assure you, it is for the best interests of Lighthouse dealers in general.
"Hoping that our relations will always remain cordial as they have been in the past, may we ask that you contact us within ten days from the above date, since these are emergency times and we feel that ten days is sufficient time for any business man to reach a decision.
"Expecting your answer, we remain
"Yours very truly,
"Lighthouse Trailer Co. "T.D. Thomas "T.D. Thomas
"TDT/1s "P. S.
"Enclosed please find check for $491.00"
At the time of the receipt of the letter above set forth defendant's father, an attorney of Leesville, Louisiana, the late Mr. Sidney I. Foster, was present. Defendant turned over to his father the file on his contract with plaintiff, and, early the following morning, received a telephone call from his father with reference to the matter. Acting upon the advice of his father defendant stopped payment on the check for $1,990 which he had delivered to the transport driver.
On April 20, 1946, defendant wrote plaintiff giving in detail his attitude with reference to the matters comprehended in plaintiff's letter of the 17th and demanding delivery of the four trailers under the terms of his contract or the payment of damages resulting from plaintiff's alleged breach thereof. On May 6, 1946, defendant's father, acting as his attorney, wrote to plaintiff suggesting negotiations looking to a settlement of the differences between plaintiff and defendant. No reply was made by plaintiff to either of the above letters, and on May 17, 1946, plaintiff filed this suit under which he sought to sequester the trailer which had been delivered to defendant on April 19, 1947. The writ issued but was not executed in view of the fact that the trailer had been sold by defendant to a purchaser who had removed the vehicle to the State of Texas.
It is contended, on behalf of plaintiff-appellant before this Court on appeal, that plaintiff was under no obligation by reason of the so-called "memorandum agreement" to deliver any trailers to the defendant and that the return of defendant's deposit at any time would close the transaction. As a corollary to this proposition it is submitted *Page 544 
by counsel for plaintiff that the defendant had the right to cancel the memorandum agreement at any time and demand the return of his deposit.
To construe the rights of the parties to the agreement involved in this litigation in the manner so naively proposed would be equivalent to declaring that a contractual agreement between the parties thereto is nothing more than a scrap of paper which may be disregarded at will by either party.
[1] We wholeheartedly agree with the finding of our learned brother of the District Court who made the following statement in his opinion on the merits of the case:
"We have no difficulty in concluding that Foster's letter of March 26, 1945, and the acknowledgement of March 29 constitute a complete and binding contract for the sale and delivery of ten trailers."
The testimony of the defendant on trial of this case is clear to the effect that immediately after April 20, 1946, he began to make plans to purchase land, erect a building and engage in the manufacture of trailer units. To this end a corporation was formed, the charter of which was filed on July 17, 1946, and after that date there was no question but that defendant devoted all of his time to the business of the corporation.
In assigning his reasons for the allowance of damages the District Judge stated:
"Foster says that in the usual course he would have received only one trailer before he gave up the retail business. That he had only one prospect to whom he was compelled to return a deposit. We therefore conclude that his loss of profits cover only one trailer."
It is on this point we find ourselves regretfully forced to the conclusion that the trial judge fell into error.
[2] We find no law, nor, indeed, has any been pointed out to us which would serve as authority for the proposition that a party to a contract which has been actively breached by the other party thereto is required to refrain from entering into business of the same or of a similar nature to that contemplated by the agreement, and to await a judicial determination of his damages before devoting his efforts to some profitable business or endeavor.
While it is true that the defendant was compelled to return a deposit to only one prospect, the record conclusively establishes the fact that there was no dearth of prospects for the purchase of trailer units. Indeed, it is definitely established by the only witnesses who were familiar with this business that prospects were clamoring for trailers.
And it must be borne in mind that the defendant did not close his retail business and begin to make plans to enter into a trailer manufacturing enterprise on his own until after plaintiff had actively breached the contract and had refused even so much as the courtesy of a reply to communications, made by and on behalf of defendant, looking to an adjustment.
[3] Not until some months after plaintiff instituted suit and not until after defendant had despaired of receiving any reply to his offers of negotiation and adjustment, and after he had risked all his property and possessions in the independent manufacturing business, did plaintiff, through its counsel, make any effort to propose negotiations for a settlement. And, for reasons which are obvious from a consideration of the record, defendant at such a late date declined plaintiff's proposals. In our opinion defendant was well within his rights in refusing, at the time and under the circumstances, to negotiate with plaintiff, and we do not perceive, despite the strenuous arguments of plaintiff's counsel, that these proposals are material or relevant to a determination of the respective rights of the parties to this litigation.
[4] It is asserted by counsel for plaintiff that the contract contained a potestative condition which rendered the obligation null in that it provided that defendant, Foster, should have the privilege of cancelling any part of the order by forfeiting $50 per unit on trailers delivered up to the time of termination. We think the trial Court correctly disposed of this condition in the following words:
"The provision that he (Foster) could cancel the contract by forfeiting $50.00 per *Page 545 
unit did not create a potestative condition because of the penalty attached to the exercise of this option." (Parenthesis supplied)
[5, 6] It is strenuously urged by counsel for plaintiff that defendant breached his contract and waived any rights he might have had to the delivery of the four additional trailers by his action in stopping payment on his check issued in payment of the sixth trailer. In other words, counsel rather ingenuously argues that by his action in stopping payment of his check to plaintiff this defendant put himself in default in the performance of his obligations under the agreement and therefore forfeited any claim he might have to the further delivery of trailers in accordance with the agreement. In support of this position a number of cases are cited, including Williams Lbr. Co. v. Stewart Gast Bro., La. App.,21 So.2d 773; Tremont Lumber Co. v. Robinson Lumber Co., 160 La. 254,107 So. 101; Southern Tie Co. v. G. W. Signor Tie Co.,164 La. 1063, 115 So. 270.
To our minds the cited cases have no applicability, under the facts, to the instant case. In the matter before this Court the facts are conclusive to the effect that there was no default on the part of defendant; there was no failure on his part to perform his obligations under the agreement, and, so far as the record shows, he had meticulously complied with the provisions of the contract in all respects, until the same was actively breached by plaintiff.
A party to a contract cannot escape the penalties contingent upon an active breach thereof by attempting to charge a party not at fault on the basis of an act which was intended solely to preserve the just and legal rights of such party.
[7] Predicated upon the provisions of Articles 2046 and 2047
of the Civil Code, it is urged on behalf of plaintiff that the judgment of the lower Court should have allowed plaintiff additional time for the performance of the contract, that is, for the delivery of the four trailers. We do not find that these articles, which deal with procedure under a resolutory condition, have any bearing upon the issues presented by the nature of the relief sought by defendant in this case. Defendant's reconventional demand is an action for damages and not an action to dissolve.
And, it is further true that the enforcement of the resolutory condition necessitates the restoration of the status quo which obviously would not be possible under the facts of this case.
[8] We are not impressed by plaintiff's effort to secure the rendition of a judgment which would restore the contract and offer the opportunity for additional time for performance in view of the failure of plaintiff to show that the time of delivery was of the essence. Defendant herein has not complained of any delay in delivery nor has he sought the dissolution of the contract on such ground. The plain and inescapable fact is that plaintiff refused to perform the contract and repudiated its agreement and its obligations thereunder, and certainly it should not now be heard to seek a reinstatement of the contract under condition which would render its performance both undesirable and impracticable.
The action of the defendant has been completely honest and straightforward in that he has presented for the determination of the Court his claim for damages and has conceded his obligation for the purchase price of the sixth trailer as an offset against such damages as might be allowed.
[9] Having disposed of the contentions advanced by plaintiff, we proceed to a consideration of what we regard as the paramount issue presented under the facts of the case, namely, the basis of fixing the quantum of damages which should be allowed defendant, plaintiff in reconvention.
There is no question but that plaintiff was guilty of a gross, premeditated and apparently inexcusable active breach of his contract with defendant. The serious results flowing from this breach are not measurable by the standard suggested by the Judge of the trial Court. The basis of damage is not to be found in the number of deposits returned by the defendant to prospective purchasers but rather it should be fixed upon the basis of the sales which could have been made by the defendant. In other words, the question posed is "If the contract had remained in force could the *Page 546 
defendant have sold the seventh, eighth, ninth and tenth trailers which plaintiff was obliged to deliver?"
We think the record in this case abundantly justifies answering this query in the affirmative. The testimony of defendant and of his witness, Donald F. Halfpenny, was uncontradicted and uncontroverted on the point that the demand for trailers in the spring and summer of 1946 far exceeded the supply.
Inasmuch as defendant could have sold the four additional trailers which plaintiff was obliged to deliver under the terms of the contract, and since, as we have above set forth, defendant's actions subsequent to the active breach by plaintiff should not be construed as estopping him from claiming the proceeds on such sales, we feel that the judgment appealed from should be amended to this extent.
Defendant, plaintiff in reconvention, itemized his claim for loss of profits as being calculated on the basis of $743.50 per trailer, or a total of $2,974 claimed as damages attendant upon plaintiff's breach of the contract. To this sum was added the claim for the return of the balance remaining to defendant's credit under the $500 deposit made under the contract, which balance was set up as being $491. Against these sums defendant concedes plaintiff's right by way of offset to the sum of $1,990 representing the purchase price of the sixth trailer. These calculations would leave a balance of $1,475 in favor of defendant, plaintiff in reconvention.
For the reasons assigned the judgment appealed from is amended and recast to read as follows:
"It is ordered, adjudged and decreed that there be judgment herein in favor of the defendant, plaintiff in reconvention, Rogers R. Foster, and against the plaintiff, Lighthouse Trailer Company, in the full sum of $1,475.00 with legal interest from date of this judgment.
"It is further ordered, adjudged and decreed that that certain check in the sum of $1,990.00, dated April 19, 1946, drawn by Foster's Trailer Sales Service in favor of Lighthouse Trailers, and that certain check in the sum of $491.00 dated April 17, 1946, drawn by Lighthouse Trailer Company to the order of Foster's Trailer Sales Service be, and the same are hereby cancelled and annulled."
And, as amended and recast, the judgment appealed from is affirmed. All costs of both Courts are to be paid by plaintiff-appellant.
KENNON, J., absent.